### Emeline Streeter v. Alexander Paton.

The statute authorizing executors and administrators to take possession of lands of a deceased person, does not exclude the possessory right of heirs or devisees, but merely permits the executors or administrators to claim and have possession, if they see fit to demand it.

The statute empowering circuit court commissioners to entertain summary proceedings to recover possession of lands unlawfully detained by tenants, is not unconstitutional.

*Heard July 18th. Decided November 3d.*

This action was originally commenced by complaint, under chapter one hundred and fifty of the Compiled Laws, entitled, "Of proceedings to recover possession of land in certain cases," before Thomas S. Blackmar, a circuit court commissioner for Wayne county, and against the defendant, as tenant, for holding over the land in question against the covenants of the lease under which he held the same, and after the time for which they were let to him had expired.

The defendant objected to the jurisdiction of the commissioner under article six of the Constitution, but the objection was overruled; and the defendant refusing to plead, the commissioner entered for him the plea of not guilty.

A trial was had, and judgment rendered in favor of the complainant.

The case was then appealed to the circuit court, where defendant renewed the objection to the jurisdiction; but the court reserved its decision until the charge to the jury, and then charged that the commissioner and the circuit court had jurisdiction.

On the trial, it appeared in evidence, that Samuel Streeter leased the premises to defendant for the period of five years from May first, eighteen hundred and fifty-three; that said Streeter died in eighteen hundred and fifty-four, intestate and childless, leaving the complainant as his widow; that on March third, eighteen hundred and fifty-four, complainant and Mason Palmer were appointed administratrix and administrator of the estate of said deceased; that they proceeded with said administration, and filed an account of administration, upon the face of which it does not appear whether it was considered a final account or not, but the judge of probate endorsed said account as follows:

"*Estate of Samuel Streeter, deceased. First and final account. Filed January 29th, 1856. Joseph H. Bagg, Judge of Probate.*

"Account allowed and examined as therein stated, to wit: A balance in the hands of administrators of the sum of ——————, Feb. 8th, 1856.    JOSEPH H. BAGG, Judge of Probate."

It appeared in evidence, by the testimony of Elijah Hawley, Jr., judge of probate, that no further proceedings were ever had in the probate court; that no further orders were ever made or entered, either for the discharge of the administrator or administratrix, or for the handing over of the property to the complainant, or otherwise.

There was no evidence that the representatives had assumed to act as such, subsequent to the rendition of said account, or that they had, as such assumed to claim or control the property in question, subsequent to that time.

The defendant asked the court to instruct the jury that the action, if it could be maintained at all, could only be

STREETER v. PATON.

maintained in the name of the administrator and administratrix of the deceased, and could not be maintained in the individual name of Emeline Streeter, the complainant.

The court refused so to instruct the jury.

The jury rendered a verdict in favor of the complainant, and the defendant moved for a new trial, on the ground that the rulings of the court above set forth were erroneous.

Whereupon the circuit court reserved for the opinion of the supreme court the following questions:

1. Had the circuit court commissioner any jurisdiction of said proceedings?

2. Was the complainant entitled to maintain said action, or should the same have been brought in the name of the administrator and administratrix of Samuel Streeter, deceased?

3. Were the above rulings of the circuit court, at the trial, or either of them, erroneous?

*W. P. Wells*, and *G. V. N. Lothrop*, for complainant.

*H. C. Knight*, and *H. T. Backus*, for defendant:

1. The elementary definition of "judicial power" is,— "Having the character of judgment, or formal legal procedure."—2 *Burr. L. Dic.* 643.

The whole proceeding prescribed by the statute is as much a "formal legal procedure" as that required in the circuit court; and the determination of it is expressly called a *judgment*. No more literal judicial procedure and judgment can be found.—See *Chandler v. Nash*, 5 *Mich.* 409; *Smith Const. Law*, 550, *et seq.*

The word "chambers," in the legal sense, denotes the judge's private office, or place of doing business, when not acting as judge in his court, in making orders, &c., not required to be brought before a full court.—1 *Burr. L. Dic.* 200.

The judicial powers of a judge at chambers are such as relate to his court, and to causes pending therein, and within its jurisdiction.

As to the nature and description of acts *at chambers,* and the powers of the judges, in England, see 11 *Petersdorf's Abr.* 635–7; *Rex. v. Wilkes,* 4 *Burr.* 2570.

And further, as to the powers exercised by the judges, and the source from which they are derived, see 3 *Harrison's Dig.* 1805; 19 *Johns.* 268; 6 *Cowen,* 59; 4 *Kernan,* 580; 3 *Hill,* 555; 15 *Ohio,* 580; 4 *Bac. Abr.* 592.

In England, judges used to sit before term, at their chambers, to hear demurrers, &c., to be formally adjudged in term.—1 *Tidd Pr.* 39.

And statute 1 and 2 George IV. enlarged such powers, and gave a legal effect to them. Such acts, previous to the statute, were not the exercise of judicial powers at chambers, but were merely a means of information resorted to by the judges as individuals, to aid them in saving the time of the court.

A very satisfactory account of the application of the term "at chambers" seems to us to be given in 1 *Tidd Pr.* 509.

It clearly appearing that, in general, powers at chambers are powers of the judge out of court, in relation to proceedings before his court, it seems to us equally clear that this constitutional exception, or incidental allusion, to such powers, does not enlarge them beyond such customary and general signification of the terms.

We do not claim that the powers of a circuit judge at chambers are stereotyped by the Constitution, and that, therefore, no powers can thereafter be conferred upon such judge at chambers; but we do insist, *first,* That the meaning of the terms is to be gathered from the practice of the courts; and, *second,* That the powers referred to are confined to the making of orders, &c., in relation to causes pending in the circuit courts, within their jurisdiction as such courts, and in its actual exercise.

The very term "circuit court commissioner," used in the statute, might be justly claimed to have some significance

Laws *previously passed*, and repugnant to a new Constitution, are void, equally with those subsequently enacted.— *People v. Kimball*, 4 *Mich.* 95.

For the theory of legislative power, &c., we cite:— *Sears v. Cottrell*, 5 *Mich.* 251.

2. This cause can not be brought and maintained in the individual name of Emeline Streeter, but should be brought in the name of the administratrix and administrator of the deceased.

It is entirely clear, by the statute, that, at the time this complaint was made, the administratrix and administrator, as such, had "the right to the possession" of the premises in question.— 2 *Comp. L. p.* 882.

And clearly the widow can not, at the same time, make this complaint, and recover in her own individual name.

MANNING J.:

The first objection is a want of jurisdiction in the circuit court commissioner. There is a statute authorizing him to hear and try the complaint, but it is said the statute, in that particular, is in conflict with the Constitution, and is therefore void.

The following are the only constitutional provisions bearing on the subject: "The judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. Municipal courts of civil and criminal jurisdiction may be established by the Legislature in cities."— *Art.* 6, § 1. By § 16 of the same article: "The Legislature may provide by law for the election of one or more persons in each organized county, who may be vested with judicial powers not exceeding those of a judge of the circuit court at chambers."

The whole judicial power, it is argued, is by the first section vested in the courts therein mentioned; and that being the case, that it is not in the power of the Legislature to vest any part of it elsewhere—not even in a

7 MICH—X.

circuit judge as such, and when not sitting in the circuit court. There are no negative or other terms used, clearly, and beyond all doubt, confining the power to the courts mentioned. It is by implication only it is so confined; and not by any express language, that the power to vest any part of it elsewhere is taken from the Legislature, if the Legislature is in fact destitute of this power. This implication, standing by itself, would be conclusive; but it may be so far overcome or weakened by counter implications from other facts, as to render it unsafe for the court to pronounce any and all statutes unconstitutional, coming in conflict with it.

It is to be observed the section makes no exception whatever, not even of judicial acts done at chambers; and yet it is obvious from the sixteenth section they were not intended to be included, for this last section authorizes the Legislature to provide by law for the election of one or more persons in each organized county, with judicial powers not exceeding those of a circuit judge at chambers. The action of the Legislature under this section would be unavailing, if the circuit judge has no judicial powers at chambers; and to give the sixteenth section effect we are compelled to make an exception to the implication that confines the whole judicial power to the courts mentioned. Without stopping to inquire what is meant by judicial powers at chambers, we will proceed to inquire whether it is not highly probable that other exceptions were intended by the Convention that formed the Constitution.

Our present Constitution was not the formation of a new government, but the continuation of a government formed under a previous Constitution, whose supposed or real defects it was intended to correct; and in construing it we are bound to look to the distribution of judicial power under the old Constitution, and to discover, if we can, the evil, if any, arising from that distribution, and intended to be corrected by the new Constitution.

We had the same statute relative to forcible entry and detainer, and to recover the possession of lands in certain cases, then that we have now. The complaint then, as now, was to be made to, and to be tried by, the circuit court commissioner, or judge of the circuit or county court of the county. We have no county judge now, as the county court was done away with by our present Constitution. We had the same law for the allowance of, and proceedings on, writs of *habeas corpus* for the release of persons wrongfully imprisoned. The writ then, as now, might be allowed by, and a hearing be had before, a justice of this court, a circuit court commissioner or circuit judge. If the construction of the Constitution, contended for by defendant, be the true construction, the allowance of the writ and the hearing must be in open court.

It is not very clear what the powers of a judge of the circuit court at chambers are under the Constitution. It would seem they must be either acts done out of court in a cause pending in court, or all judicial acts which the circuit judge may be authorized by statute to perform out of court, whether they relate to a cause pending in court or not. If this last be the true construction, it would not authorize a justice of this court to hear a case of *habeas corpus*, but it would a circuit judge or circuit court commissioner. It would also give the circuit court commissioner jurisdiction in the case before us.

We have a statute older than our present Constitution, for the appointment of commissioners for the allowance of claims against the estates of deceased persons. They are appointed by the judge of probate, but they are not a part of the probate court. They fix their own time and place for hearing and adjudicating on all claims presented against the estate. The probate court has no control whatever over their action, and an appeal lies from their allowance or rejection of a claim to the circuit court. Proceedings under the act against fraudulent debtors are,

in their character, judicial. So are proceedings under the act for the relief of insolvent debtors. Many other instances might be mentioned in which judicial power, to a limited extent, is lodged in the hands of different officers, for specific purposes, to be called into action as occasion may require. But those we have mentioned, we think, are sufficient to raise a strong probability, amounting almost to a certainty, that the makers of the Constitution did not intend that these and like powers should be taken from the several depositories under the then existing laws, and be vested exclusively in the courts mentioned in the first section of the sixth article of the Constitution. We are not aware of any complaint ever made against these special tribunals, or that they were ever regarded, by any portion of the community, as an evil requiring correction.

By courts, as the word is used in the Constitution, we understand permanent organization for the administration of justice, and not those special tribunals provided for by law, that are occasionally called into existence by particular exigencies, and that cease to exist with such exigencies.

Under our former Constitution, the Legislature had unlimited power to create inferior courts. In the exercise of this power the Legislature, at the commencement of the state government, created a court of chancery, and circuit courts with powers, except in chancery, analagous to our present circuit courts. These, with the Supreme court, probate courts and justices' courts, established by the Constitution, were our only courts at the commencement of the state government. In 1840 the Legislature established a district court for the county of Wayne, and gave it cognizance of all crimes, misdemeanors and offenses, in as full and ample a manner as the circuit court of said county had cognizance thereof. This act was repealed in 1843, and district courts were established in the counties of Wayne, Oakland, Washtenaw and Jackson, with like

cognizance to the district court established in Wayne county in 1840. By the Revision of 1846, the court of chancery and district courts were abolished, and county courts were established. The county courts gave more or less dissatisfaction in many parts of the state, and continued to exist until they were abolished by the present Constitution. These frequent changes in the judicial tribunals of the state were looked upon as an evil, which the Convention that framed the present Constitution, we think, intended to prevent in the future by the first section of the sixth article of the Constitution.

The construction contended for would be attended with many inconveniences, without any corresponding benefits. It would not only lumber the courts with much unimportant business that has heretofore been done, without complaint, by the ephemeral statutory tribunals of which we have spoken, but it would, in many counties where the circuit court sits but twice a year, almost amount to a denial of justice, in many cases. And the Convention must have foreseen that these inconveniences would result from denying all power to such special tribunals. Under such circumstances we do not, on a supposed implied constitutional inhibition, feel ourselves warranted in declaring the statute unconstitutional giving the circuit court commissioner jurisdiction in the case before us.

We do not wish it to be understood, or inferred, from what we have said, or in holding this law constitutional, as we do, that it is competent for the Legislature to vest circuit court commissioners or other officers with any power it may think proper.

The next objection is that the right to the possession of the land was in the personal representatives of the deceased, and not in the plaintiff, at the time of making the complaint.

Her husband having died without issue, and without a will, the land descended to her for her natural life. — *Comp. L.* § 2812.

On granting letters testamentary or of administration, the probate court is to fix a time for the executor or administrator to settle the estate in, which is not in the first instance to exceed eighteen months, but may be extended from time to time not exceeding in all four years. — *Comp. L.* §§ 2946, 2947. The executor or administrator is to make and return to the probate court an inventory of the real as well as personal estate of the decedent, and both are to be appraised. — *Comp. L.* §§ 2898, 2899. And when the personal estate is insufficient to pay the debts, he may sell the real estate, on obtaining a license for that purpose from the probate court, but not without. — *Comp. L.* § 3039. In his account he is to be charged with the whole of the personal estate, and with the proceeds of the real estate which may be sold for the payment of debts and legacies, and with all the interest, profit and income, which shall in any way come to his hands from the estate of the deceased. — *Comp. L.* § 2977.

Previous to the Revision of 1846, the personal representative had nothing to do with the real estate, except that when the personal estate was insufficient to pay the debts of the deceased, and the expenses of administration, he might sell it, or so much of it as was necessary for that purpose, on obtaining a license from the probate court. The real estate descended to the heir, who alone was entitled to the possession, and to all subsequent rents and profits, and might sell it, subject to the right of the personal representative to sell it for the payment of debts, on obtaining the requisite license. It sometimes happened both the personal and real estate were insufficient to pay the debts of decedent, and as the law then stood the heir would, notwithstanding, be entitled to the rents and profits from the death of his ancestor, until the estate could be represented as insolvent to the probate court, and a license be obtained, and a sale made. The object of the present statute, we think, is to prevent this injustice to creditors, and to have

the rents, as well as the proceeds of the sale of the land, applied to the payment of debts. We are strengthened in this conclusion by the phraseology of the act, which is not imperative, but gives a right which the personal representative may or may not exercise. The language is "the executor or administrator shall have a right to the possession," and "may receive the rent," &c., "until the estate shall have been settled, or until delivered over by order of the probate court to the heir or devisee."— *Comp. L.* §2904. The executor or administrator in settling his account in the probate court, is to be charged with the whole of the personal estate, but nothing is said of the rents and profits of the real estate, except in connection with the proceeds of the sale of it. It is the duty of the personal representative to take possession of the real estate when it, or the rents and profits, may be needed in the settlement of the estate ; but when this is not the case, although he may do so under the statute, we do not think it imperative on him, nor can we see any reason why it should be, as the personal and real estate under our present laws go to the same persons. The personal estate may be more than ample for all the purposes of administration, and years may be required in settling the estate. It would be a harsh construction of the statute that would deprive the heir of his inheritance in the meantime. In *Masterson v. Girard's Heirs*, 10 *Ala.* 60, like views were taken of a similar statute.

The true construction of the statute, we think, is, that the right of possession is in the heir, until the executor or administrator takes possession, or otherwise claims his right under the statute.

It be must certified to the circuit court, that the circuit court commissioner had jurisdiction; that plaintiff was entitled to maintain the action in her own name, and that there was no error in the rulings of the circuit court on the trial.

MARTIN CH. J. concurred.

CHRISTIANCY J.:

I agree entirely with my brethren as to the right of the widow to sustain this proceeding in her own name.

As to the power of the commissioner, I concur in the result, but I place my concurrence on the ground that the power in question, in the present case, is one which was possessed and exercised by such commissioners, and by the several circuit judges out of court, previous to, and at the time of, the adoption of the Constitution.

CAMPBELL J. did not sit in this case.