### Robert Kline v. Storrs H. Moulton, Administrator, &c.

The interest which an administrator has under the statute in the possession of the real estate of his intestate is not a personal chattel, and can not be sold by him. It is given to enable him to receive the rents, issues and profits of the land, while the estate is being settled; and for no other purpose.

On the death or removal of the administrator his possessory right, and the rents and profits connected with it, pass to his successor, who may maintain ejectment to recover possession from one claiming under the first administrator.

An administrator, who was also one of several heirs, made a contract in his own name to sell and convey certain real estate of his intestate, and put the purchaser in possession. On his decease without having fully administered, an administrator *de bonis non* was appointed, who brought ejectment against the purchaser. It was held that under the statute—*Comp. L.* § 2904—he was entitled to recover.

*Heard May 8th and 9th. Decided May 30th.*

KLINE *v.* MOULTON.

Error to Washtenaw Circuit.

Ejectment by Storrs H. Moulton, administrator *de bonis non* of the estate of Freeman Moulton, deceased. The cause was tried by the Circuit Judge without a jury, and the following is his finding:

"This was an action of ejectment, brought by the plaintiff to recover possession of the south half of the south-west quarter of sec. 28, T. 4 south, range 5 east, excepting ten acres on the west side sold to Michael McEnneay. The lands were purchased of the United States by Freeman Moulton, of which he died seized and intestate, Sept. 3, 1854, leaving Sybil Moulton, his widow, and his sons Albert G. Moulton, Storrs H. Moulton, Ariel Moulton, and Orlando Moulton (who died unmarried and intestate in 1858), and two grand daughters, Elizabeth Hulbert and Mary Crittenden, his heirs at law. Albert G. Moulton was appointed administrator of the estate of Freeman Moulton, deceased, March 26, 1855, and died in December, 1860. Appraisers were appointed, and an inventory and appraisal of the property of the deceased was filed on the 23d day of April, 1855, as follows:

The lands above described, appraised at        $1,575 00
One promissory note against Robert Liddel, of
    $43 67, dated Nov. 15, 1854, appraised at        43 67
One note against Albert G. Moulton, of $250
    00, bearing date Oct. 1854, appraised at        250 00
Money, eighty dollars, appraised at        80 00
Rent due on real estate, $75 00, appraised at        75 00

and no further or other proceedings appear in the probate office to have been had in the case during the lifetime of the said Albert G. Moulton. The plaintiff, Storrs H. Moulton, was duly appointed and qualified administrator *de bonis non* on Freeman Moulton's estate, Feb. 27, 1861, by the Probate Court of said county. Appraisers were appointed, and inventory made and returned August 16, 1861, showing

the estate of said deceased, Freeman Moulton, to consist of said lands and no personal property. By an order of the Probate Court, one year from the 27th day of February, 1861, was allowed for disposing of the estate and paying the debts, and six months for the presentation and allowance of claims against the deceased. Commissioners to receive and allow claims on the estate were duly appointed, and in pursuance of proper notices they held meetings as required by law during said six months, for that purpose, but no claims against the estate were presented, and they made no report because their fees were not paid; and no further proceedings appear at the probate office to have been had in the case.

"The lands in question previous to the decease of Freeman Moulton were rented to one Howell, and the rents for the same were subsequently received by Albert G. Moulton, as administrator. Albert G. Moulton, without any license from the Probate Court, and without the consent of the other persons interested in the estate of said Freeman Moulton, so far as the proof shows, sold the lands to the defendant, Robert Kline, and gave his ¦bond in the penal sum of two thousand dollars to said Kline, dated Dec. 27, 1858, with the following condition:

"The condition of this obligation is such that if the above bounden Albert G. Moulton, his heirs, executors and administrators, execute and acknowledge and deliver to the said Robert Kline, or to his heirs, executors, administrators or assigns, a good and sufficient warranty deed conveying those certain pieces or parcels of land described as follows: (description as above), the obligor reserving all crops now on the ground, on or before the first day of November, 1859: Provided the said Robert Kline, his heirs or assigns, pay to the said Albert G. Moulton for the said land as follows: The sum of two hundred dollars on the first day of April next; one hundred dollars, with interest from April 1st, 1859, on the first day of July next; two

hundred dollars, with interest from the first day of April next, on the first day of November, 1859; and the sum of twelve hundred dollars, with interest thereon annually from the first day of April next, in five equal annual instalments; said Kline to secure the said sum of twelve hundred dollars by a promissory note, and a mortgage collateral thereto on the premises above described, at the time of the delivery of said deed: then these presents to be null and void; otherwise of full force and effect."

"It was verbally agreed by said Albert G. Moulton at the time of making the contract or bond above mentioned, that said Kline should have possession of the premises on the first day of April then next, and he went into possession of said premises on the third day of April, 1859, when the other tenant left, and has continued in the sole and exclusive possession of said premises ever since. At the time of the sale Albert G. Moulton represented to the defendant that he was administrator of Freeman Moulton, and as such had a right to sell the property. Upon the bond or agreement Kline made payments to the amount of $590 to Albert G. Moulton, for which he took his receipts.

"Albert G. Moulton died in December, 1860, and the present suit was commenced June 7, 1861. No notice to quit, or demand of possession, was proved in the case.

"The counsel for the defendant, on the argument, made and insisted upon the following points, to wit:

"First: That the defendant is possessed of all the interest of the administrator under the statute (Comp. L. § 2904) by purchase from him.

"Second: That Albert G. Moulton, in his lifetime, could not, as administrator, have maintained this suit against the defendant after his sale to him, and that his successor, the administrator de bonis non, has no more power than the original administrator had.

"Third: That neither administrator could eject the defendant without notice to quit.

"Fourth: That if Kline did not take the possessory right which the law gives to the administrator, he did take Albert G. Moulton's right to the possession as an heir, and that, possessing such right, he is entitled to three months notice to quit.

"Fifth: That the administrator held only a lien on the real estate to enable him to make payment of the debts, and there being no debts the administrator can not maintain this suit.

"Sixth: That the right to the possession of the premises was fully administered by Albert G. Moulton, as administrator, and the plaintiff, as administrator *de bonis non*, has consequently no right to interfere with the same, or to recover the possession thereof.

"Seventh: That if the sale was made and possession given by Albert G. Moulton not as administrator, but as heir merely, still, by his knowledge of Kline's rights, of his paying part of the purchase money and going into possession, both he and the administrator *de bonis non* are estopped from denying Kline's right to the possession of the premises.

"Eighth: That the proof shows that no reason exists, connected with the administration of the estate of the deceased, why the plaintiff should have possession of said premises, and so the suit can not be maintained.

"All of which points raised by defendant's counsel were overruled by the Court, and the following conclusions of law were deduced from the foregoing facts:

"First: The sale or agreement entered into by Albert G. Moulton, in his individual capacity, without any license to sell from the Judge of Probate, was not such a sale or administration of the estate as would be binding on the administrator *de bonis non*.

"Second: Under our statute (C. L. § 2904) the administrator has a right to the possession of all the real as well as personal estate of the deceased, and may receive

the rents and profits of the real estate until the estate shall have been settled, or until delivered over by order of the Probate Court to the heirs or devisees. The conditions of the statute not having been complied with—for if there are no debts against the estate it has not been delivered to the heirs or devisees by the Probate Court—the administrator is entitled to the possession.

"Third: The defendant, holding under a contract of purchase, is not entitled to notice to quit, either as purchaser or assignee of the heir.

"Fourth: The administrator *de bonis non*, the plaintiff, is therefore entitled to the possession of the premises in question, and to a judgment against the defendant for the same, with his costs of suit."

*A. Felch*, for plaintiff in error:

1. Kline by his purchase of the premises of Albert G. Moulton, obtained all the right which the administrator had under the statute to the possession. This was the right of occupancy until administration closed, and this possessory right he holds by his purchase.

The right of the administrator to the possession and rents of the real estate is a mere chattel interest, and can be disposed of by him like other personal estate. Such an interest, if belonging to deceased in his life time, would be only a chattel interest, and would go to the administrator, and would be governable and descendable in the same manner as personal property:— 2 *Kent*, 400, 401; *Case of Gay*, 5 *Mass*. 419; *Brewster v. Hill*, 1 *N. H.* 350.

License to sell the property of the deceased is required under our statutes only where an absolute sale of real estate is contemplated. The right to the possession given by *Comp. L.* § 2904, does not transfer any title. Under it the administrator may occupy himself, or rent for any definite time, upon such terms as he sees fit, accounting for the proceeds as for other moneys coming to his hands

from the decedent's estate. It is expressly committed to him for that purpose, and he has more unlimited power over it than in ordinary cases of personal property. The statute puts no limit on his control of the possessory right until the contingency terminating it happens. It requires no license from the Court to exercise absolute power over it. He has the same *jus disponendi* of this that he has of the personal estate of the deceased. The sale to Kline was a sale of this possessory right.

It is no objection that the contract embraced a larger estate than the leasehold interest: — *Bergin v. McFarland,* 6 *Fost.* 533.

If Albert G. Moulton could not, if living, eject Kline, neither can the administrator *de bonis non.* The latter is bound by the acts of his predecessor in the administration, and is estopped from denying their validity: — *Cheek v. Wheatly,* 3 *Sneed,* 484.

2. If Kline did not acquire the possessory right given to the administrator, he did take the interest of Albert G. Moulton, as an heir at law of Freeman Moulton, deceased, and holds under such heir, and is entitled to three months notice to quit.

The administrator is under no obligation to take possession of the real estate—he is not liable to account if he does not. It is at his option to do so or not. This right in the administrator does not prevent the heir taking and holding possession. The latter may maintain ejectment and thus obtain possession by legal process: — *Streeter v. Paton,* 7 *Mich.* 341.

Can the heir thus put in possession be so far at the mercy of the administrator that he may the next moment be sued in ejectment without warning and without notice? If so the law intended to protect his rights would operate to his destruction. His legal possession would only expose him to the loss of his labor, his crops, his improvements, at the arbitrary will of the administrator. I submit that

when the heir goes into possession — especially if it be by process of law or with the consent or acquiescence of the administrator—he holds by a right at least as sacred as that of tenant at will, and is entitled to notice.

3. The property—that is, the possessory right given to the administrator — was fully administered by Albert G. Moulton, as administrator, and the administrator *de bonis non* has consequently no right to interfere with or possess himself of the same.

4. If the sale was made and possession given to Kline by Albert G. Moulton, not as administrator but as heir merely, still by his knowledge of Kline's rights, of his payment of the purchase money and going into possession, both he and the administrator *de bonis non* are estopped from denying Kline's right to the possession of the premises.

It is the case of an absolute sale by an heir with the knowledge and concurrence of the administrator. The general doctrine of *estoppel* would prohibit the denial of the right of the purchaser: — *Sayles v. Smith*, 12 *Wend.* 57; *Rangely v. Spring*, 28 *Me.* 127; *Brown v. Wheeler*, 17 *Conn.* 345; 2 *Smith Lead. Cas.* 361, 362.

But this case is still stronger than the authorities above cited. The title of the heir being fully recognized by law, and the administrator having a mere option to take possession, any circumstances which show a simple waiver of that right, would be sufficient to prevent his recovery of the possession. Having waived it in favor of a purchaser from the heir, he can not be permitted to dispossess the purchaser.

An heir acquiescing in the sale of the decedent's property can not afterwards deny the validity of the sale:— *Lee v. Gardiner*, 26 *Miss.* 521. The same rule would apply to the administrator when the heir sells with his knowledge and consent.

5. The purposes for which the right to possess the decedent's real estate was given by law to the administra-

tor, have been accomplished, and his right to eject the occupant has ceased. The purpose for which the possession is given is stated to be, under our statute, to prevent injustice to creditors of the deceased, and "to have the rents, as well as the proceeds of the sale of the land, applied to the payment of debts:" — *Streeter v. Paton*, 7 *Mich.* 341.

It is really a simple lien on the income of the real estate, for the payment of the debts of deceased.

It is given at the option of the administrator, and the option continues "until the estate shall have been settled, or until delivered over," (that is the land), "by order of the Probate Court, to the heirs or devisees."

The *delivering over*, here mentioned, evidently had reference to the subsequent provision of the statute, § 2092, which provides that when the debts, &c., are paid, or a sufficient sum received for that purpose, the court may assign the residue to the persons entitled by law to the same. When the real estate is so assigned, the administrator's possession must cease. But this contemplates a termination of the administrator's right before the other contingency—to-wit, the settlement of the estate—has happened. There can be no such thing, I respectfully submit, as the right of the administrator to continue his possession after the estate is settled, for any subsequent distribution, or any other purpose, as is stated in the legal proposition stated in the record. The estate once settled, the administrator's right to possess the land is gone — it may cease before by a prior assignment of the land to the heirs or devisees.

But when shall the estate be said "to have been settled," so as to terminate the administrator's use of the real estate and its income?

I answer, whenever the legitimate purposes for which the law gives it, have been accomplished. These purposes are the payment of the debts and legacies and necessary costs of administration.

In Vermont, the statute gives the possession of the real estate to the executor or administrator, and prohibits the heir from maintaining a suit for it until the administration is closed. Nevertheless in suits brought by the heirs to recover possession of the land, the court hold that after a lapse of time, they would presume the lien of the administrator discharged, and put the heirs in possession:—*Hubbard v. Ricart*, 3 *Vt.* 207; *Abbott v. Pratt*, 16 *Vt.* 626; *Cox v. Ingleston*, 30 *Vt.* 258; *Buck v. Squires*, 22 *Vt.* 484.

The same doctrine was applied in suits by administrators against the heirs:— *Roberts' adm. v. Morgan*, 30 *Vt.* 319 *Cushman, adm. v. Jordan*, 13 *Vt.* 597.

In this case it is not necessary to rely on any presumptions. The case itself establishes the fact that the property was not needed for any purposes of administration.

*H. J. Beakes*, for defendant in error:

1. The bond to convey was made by Albert G. Moulton in his own name, and could not bind the estate.

But if it had been made by him as administrator, it would have been void, not only as an act without legal authority, but as against public policy :— *Hunt v. Frost*, 4 *Cush.* 54 ; 3 *Cow.* 299; 9 *Geo.* 114; 1 *Bailey*, 45.

If Albert G. Moulton had professed in the contract to act as administrator, and had received the entire value of the property, he could not be charged with the proceeds of the sale in the settlement of his administration account : — 13 *Ala.* 781.

The claim that the administrator *de bonis non* is bound by the illegal as well as the legal acts of his predecessor, is not well founded. A void act binds no one. It would seem that the question whether a contract utterly void could divest an estate of its rights, should be too clear for dispute, but it is decided in *Holt v. Clark*, 14 *S. & M.* 187. The question here is not whether we can review the *mal*-administration of Albert G. Moulton, *while acting within the scope*

*of his power*, but whether an act in excess of his power binds the estate.

2. *Streeter v. Paton*, 7 *Mich.* 341, recognizes the fact that the administrator has a right of possession, paramount to that of the heirs. See also *Wales v. Newbould*, 9 *Mich.* 83, 84.

The statute does not confine the right of possession to *so much* of the real estate as may be required for the payment of debts, but in express terms gives him the right of possession of *all* the real estate. It does not limit the right to the time when the debts are paid, but continues it in force "until the estate shall have been settled, or until delivered over by order of the Probate Court, to the heirs or devisees."

The claim that "the administrator has only a *lien* on the real estate to enable him to make payment of the debts," is not well founded. Where as in this case there are several heirs, the administrator under our statute holds the real and personal estate, not only for the purpose of paying debts and expenses of administration, but also for the purpose of securing *a just distribution* of the estate among the several parties entitled to it, until administration shall be closed and the estate divided by the court.

The cases cited from Vermont to show that the administrator has a mere lien for the payment of debts, are under a statute differing considerably from ours.

3. Kline was not entitled to notice to quit. A notice to quit is not necessary where the relation of landlord and tenant does not exist:—4 *Wend.* 436; 7 *Halst.* 99; 17 *Johns.* 157, 159; 7 *Cow.* 747; 1 *Wash. Real Prop.* 381.

If a party in possession under a contract of purchase is a tenant at will of the vendor, as is held in *Dwight v. Cutler*, 3 *Mich.* 572, the ordinary relations of landlord and tenant do not exist:—16 *Pet.* 54; 7 *Cow.* 747; 14 *Mo.* 350; 1 *Cow.* 122; 8 *M. & W.* 118; 7 *Barb.* 74; 20 *Barb.* 509.]

Where the tenancy is strictly at will no notice to quit is necessary:— 1 *Washburn Real Prop.* 381, 376; 7 *Cow.* 747; 3 *Humph.* 404; 2 *Caines,* 129; 1 *Smith Lead. Cas.* 668; 2 *Smith Lead. Cas.* 188; *Crane v. O'Reilly,* 8 *Mich.* 315. Tenancies which at the common law were at will only, are now divided into two classes. In the one class, which is strictly a tenancy at will, no notice to quit is required. In the other class originally by a sort of judicial legislation, and afterwards with the sanction of statutory provisions, notice was required:—1 *Washb.* 375.

In this case the plaintiff in error contracted with Albert G. Moulton individually. There is no privity between the parties, and therefore no notice to quit is necessary.— 2 *Johns.* 84, 87; 3 *Johns.* 422; 4 *Johns.* 215; 17 *Johns.* 159; 13 *Johns.* 106; 2 *Dow. & Ry.* 706.

Kline holds adversely to the administrator. A disclaimer of a landlord's title dispenses with the necessity of any notice to quit:—6 *Johns.* 272.

If Kline was tenant at will under Albert G. Moulton the tenancy ceased at the death of the latter: — 2 *Washb. Real Prop.* 372.

MANNING J.:

The alleged errors may be reduced to two:

First, That the facts found by the Court show, that Albert G. Moulton administered on the possessory right he had in the land, as administrator, by a sale thereof to the plaintiff in error.

Second, That the defendant in error, who is administrator *de bonis non,* did not show on the trial that the rents, issues and profits of the land, were needed to pay the debts of the estate and expenses of administration.

Kline claims to be the owner of the administrator's right of possession under a contract between him and Albert G. Moulton, the first administrator, for the purchase of the land. This contract is signed and sealed by both

parties, and is a bond in the penal sum of two thousand dollars, conditioned that Moulton should by a good and sufficient warranty deed convey the premises to Kline, by a certain day, on Kline's making certain payments on and before that day, and giving his promissory note for a certain sum secured by a mortgage on the premises. Kline is in possession under this contract, but it is not executed by Moulton as administrator. It is insisted, however, that it is not necessary it should be to convey the administra-tor's interest in the land, which interest is likened to a personal chattel belonging to the estate, which the administrator may sell as well in his own name, as he can as administrator.

If the administrator's right to the possession of the land could be regarded as a personal chattel, the argument would be conclusive if the contract in other respects is one that would bind the estate, about which it is not our intention to express an opinion.

The possessory interest of the administrator is not a personal chattel. It is not treated as such by the statute. It is not inventoried and appraised, or required to be accounted for at its appraised value, or whatever it may be sold for, and there is nothing in the statute authorizing it to be sold. It is, we think, clear from the whole stat-ute that it is not given to the administrator to be sold by him, but to enable him to receive the rents, issues and profits of the land—for which he is required to account—while the estate is being settled, and for no other purpose. He may let the real estate, or if it was let by the decedent, he may receive the rents; but he can make no disposition of it, by letting or otherwise, to interfere with the settle-ment of the estate, or the sale of the land for that purpose under an order of the Probate Court. And on the death or removal of the administrator, his possessory right, and the rents and profits connected with it, pass to his successor, or the administrator *de bonis non*.

On the other point the statute is too clear and explicit to admit of a doubt. We can not make it more clear by anything we can say. It says: The executor or administrator shall have a right to the possession of all the real as well as personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over by order of the Probate Court to the heirs or devisees, and shall keep in good tenantable repair all houses, buildings and fences thereon which are under his control:— *Comp. L.* § 2904.

The judgment of the Circuit Court must be affirmed, with costs.

The other Justices concurred.