## James J. Campau et al. v. Daniel J. Campau et al.

*Partition between heirs: Possession: Powers of the Court in decreeing equity of partition.* In a partition in equity between heirs, it is not necessary that it should appear that the estate had been settled, or delivered over by the Court of Probate.

It was not the intention of the statute, in conferring upon administrators the right to take possession of the estate of the deceased for the purpose of collecting rents, etc., to create an intervening estate between that of the ancestor and that of the heir, converting the latter into an estate in expectancy.

Heirs have such an estate in possession of the inheritance as will enable them to maintain a bill in equity for a partition, notwithstanding the existence of the power of the administrator to take possession under the statute.—*Streeter v. Paton,* 7 *Mich.,* 341 and *Marvin v. Schilling,* 12 *Mich.,* 312 recognized and approved.

When one of several heirs files a bill for a partition against the others, who had attempted a voluntary partition of the whole estate among themselves, excluding complainant, the Court may respect the voluntary partition, so far as it does not prejudice the rights of the complainant.

*Parties.* An objection at the hearing for want of parties will not be allowed, unless the facts which show the objection to be well taken, appear on the record; and an allegation that a sheriff executed a deed purporting to convey certain lands to certain persons, without showing by what authority, shows no interest in the grantees, nor any necessity for making them parties:

Nor will an objection that a party was irregularly added in the court below, it appearing that the person so added was a proper party and would be bound by the proceedings.

*Heard July 9. Decided October 5.*

Appeal in Chancery from Wayne Circuit.

This was an appeal by Daniel J. Campau, one of the heirs of Joseph Campau late of Detroit deceased, from a decree of partition rendered in the Circuit Court for the County of Wayne, in a cause wherein the children, heirs of James J. Campau, ( who was a son of said Joseph deceased ), were complainants, and all the other heirs of said Joseph, including the appellant, were defendants.

Omitting all unnecessary details and collateral matters which do not affect the principles involved, it is sufficient to say that the bill, ( which was filed July 1867), alleges that complainants are the children and heirs of James J. Campau deceased, ( who was one of the heirs of said Joseph deceased ), and, as such, seized of one undivided ninth interest in the real estate of said Joseph deceased, subject to the dower of their mother, Alice M.; sets forth the respective interests of all the defendants; states that the larger portion of said real estate is situated in the County of Wayne, but considerable amounts thereof in other counties; and was altogether appraised, by appraisers duly appointed, at over one million of dollars; alleges that two of the defendants, ( being heirs of said Joseph ), Theodore J. and Dennis J. Campau, were, with one Francis Palms, the administrators of the estate of said Joseph deceased ;—that commissioners had been duly appointed to receive, examine and adjust claims against said estate; that the time for creditors to present their claims has long since expired;—that the amount of claims allowed by the commissioners was $6,721,67 as per their report made February 11, 1865, and avers upon information and belief, that there are no further debts against the estate.

The bill does not state, nor is it shown whether there were or were not other assets beside the real estate sufficient for the payment of the debts, nor whether the debts proved have been paid. It alleges, upon information and belief that,

on the 27th of June, 1867, the Sheriff of the County of
Wayne made and executed a deed as such Sheriff, purport-
ing to convey the interests which Theodore, (one of the
heirs of Joseph and a defendant in this bill), had in five
several lots in the city of Detroit, describing them, (being
but a very small portion of the real estate of the deceased),
to Frederick E. Driggs and Milton H. Butler, who claim
to have acquired by said deed an equal undivided ninth of
said lots;—that prior to the 9th day of January, 1867, the
defendants Daniel J., Theodore J., Dennis J., and Alexander
T. Campau, Catharine D. Palms, Matilda Chapoton, Elizabeth
Brown and Louisa V. Hane, ( constituting all the heirs of
said Joseph deceased, except the complainants), contriving
to confuse and complicate the title to said real estate,
caused to be made plats of the parcels thereof, subdivid-
ing the same into blocks, lots, streets and alleys, and pre-
tended to dedicate such streets to the public use;—that
they acknowledged said plats and caused them to be deliv-
ered to the Registers of Deeds of the respective counties
for record ; and caused to be executed, acknowledged and
delivered to each other their several deeds purporting to
convey in fee to each other, entire parcels of said estate
and specific blocks and lots by number and description as
contained in said plats, so that each of them might own in
severalty, whole specific portions;—that they thus undertook
to convey and partition among themselves, the entire real
estate of said deceased, not sold by the administrators, pay-
ing no attention to and wholly repudiating any interest
or rights of the complainants therein and of their mother,
the widow of said James J. deceased, and making no pro-
vision for their interests ;—describes the portion so conveyed
to each defendant, (by which it appears that three of the
lots, Theodore's interest in which, is previously said to have
been deeded by the Sheriff to Driggs and Butler, were
conveyed and released by all the other parties executing

the deed to said Daniel J.);—states that said pretended partition deeds were recorded, that each of the defendants to whom such deeds were so made, claims the right to collect all the rents unpaid, and to accrue on the premises conveyed to them respectively, and that said Theodore J. and Dennis J. as administrators, authorize and consent thereto, and set up and give out, that they, as administrators, have no further duties to perform;—prays that partition may be made according to the rights of the parties as far as practicable, or for sale of such portions as may be found not susceptible of partition;—that a receiver may be appointed to receive rents and profits, pay taxes, etc., until final decree.

The appellant as one of the defendants demurs to the bill, on the ground that it did not thereby appear that the estate of Joseph Campau, deceased, had been settled or delivered over by order of the Probate Court to the heirs, or that the complainants had any present right to the possession thereof, or to the relief prayed for by their bill.

This demurrer was overruled, with liberty to answer in five days; but appellant never answered.

The cause was afterward brought to a hearing upon bill and answer, (of the other defendants), and on report of a Circuit Court Commissioner which was duly confirmed, a preliminary decree was rendered, which, after ascertaining and establishing the rights of the complainants and the respective defendants, recites, among other things, the facts of the attempted partition by deed among the defendants, and then proceeds to decree that partition be made of the real estate in the bill set forth, among the several parties, complainants and defendants, according to their respective rights and interests, as therein above set forth " and subject to the direction herein contained ; that is to say, that out of and from said premises, there be partitioned and set off to complainants such part and portion thereof as shall be equal in value to one ninth of the whole of said premises.

And on motion of Mr. Lothrop it is ordered that, in making said partition respect shall be had to the voluntary partition, and division of said premises, so far as the same can be done without prejudice to the just rights and interests of the complainants, in order that, so far as practicable, each of said shares and parts made by said voluntary partition, may be made to contribute like and equal proportions toward the one-ninth to be set off to the complainants." It then, in substance, orders a similar rule to be observed in making partition between the defendants of the one-ninth interest derived from Emily Lewis, (one of the original heirs of Joseph), which had been purchased in by the defendants after said amicable partition, "said voluntary partition to be altered or disturbed only as far as shall be neccesary in adjusting and altering the same according to the respective rights of" the said defendants, (who had purchased in said interests in an equal proportion), in the said one-ninth.

It then proceeds to appoint three commissioners to make the partition, (with certain special directions which need not to be noticed), and to report the same to the Court. The decree than proceeds;—"and whereas it appears that the said James J. Campau, (the father of complainants, through whom they derive their title), did in his life time release to the said Daniel J. Campau his interest in those lots, situated in the City of Detroit, on the Guoin farm so called" [describing them]: It is further ordered that in making up their valuation of said estate for the purpose of partitioning and setting off to the complainants their proper share and interest, said last named two lots be wholly excluded.

The commissioners made and filed their report November 21, 1868, notice of which was duly served on the solicitors of all the defendants, and no exceptions were taken.

On the 29th day of January, 1869, Alice M. Yates, (for-

CAMPAU ET AL *v.* CAMPAU ET AL.

merly Campau), mother of the complainants and widow of James J. Campau, who had not been made a party to the bill, was, upon her own petition, allowed to be made a party defendant, she consenting to all the proceedings had, and to a decree being entered confining her dower to the premises set off to complainants.

On the 10th day of February, 1869, the final decree of partition was rendered, in accordance with the commissioners' report. This decree without otherwise disturbing the amicable partition previously made by the defendants, assigned to the complainants, one-ninth in severalty of the lands set off and conveyed to each of the seven defendants respectively, by the amicable partition made by themselves, and divided the share derived by the defendants, through Emily Lewis, among the defendants on the principles of the special instruction in reference thereto, in the preliminary decree. The Court declared in favor of sustaining this decree, but the order was withheld to give hearing to a petition by Butler, et al.

*D. C. Holbrook*, for complainants and appellee ; Cites *Kelly v. Kelly, 41 N. H. 501 ; Collamer v. Hutchins, 27 Vt. 733 ; Cox v. Ingleston, 30 Vt. 258 ; Streeter v. Paton, 7 Mich. 341 ; Wotten v. Copeland 7 Johns. Ch. 140 ; 1 McCarter N. J.; Duncan v. Campau, 15 Mich. 416 ; McGregor v. Reynolds, 19 Iowa 228.*

*S. T. Douglass*, for D. J. Campau appellant and one of the Defendants : Cites, *Comp. L.* §§ *4,616, 4,617 ; Hunewell v. Taylor, 6 Cush. 475 ; Tabler v. Wiseman, 22 Ohio, 207 ; Clapp v. Bromagham, 9 Cow. 550 ; Stevens v. Enders, 13 N. J. 274, 275 ; 1 Washb. on Real Pr. 428 ; Comp. L.* § *2,904; Kline v. Moulton, 11 Mich. 370; Comp. L.* §§ *2,992, 2,993, 2,994; Comp. L.* § *2,991; 1 Washb. on Real Pr. 417; 1 Jones Eq. (N. C.) 114.*

19 MICH.—P.

CHRISTIANCY J.

The first ground on which the appellant seeks a reversal of the decree of partition is that presented by his demurrer, that it does not appear that the estate of Joseph Campau has been settled or delivered over by the Probate Court to the heirs. And it is urged that, until this is done, the administrators having the right to the possession of the real estate by the statute, the heirs can have no right to maintain a bill for partition.

The settlement of the estate and delivery of the property to the heirs by order of the Probate Court, would undoubtedly constitute necessary prerequisites to a partition in that court, where, under the statutes, partition is to be regarded as an incident of, and part of the proceedings for, the settlement of the estate. The right to a partition is there confined to such real estate as has been assigned by that court to the heirs or devisees, after the payment of debts. Rev. Stat. of 1846, Ch. 74 Secs. 1 to 9 ( *Comp. L. Secs. 2,991 to 2,999.*)

But these restrictive provisions are not to be found in the statute providing for partition by bill in equity. The right to partition is there expressly given to " all persons holding lands as joint tenants or tenants in common," subject only to this restriction, that the suit can only " be maintained by a person who has an *estate in possession* in the lands of which partition is sought, but not by one who has only an estate therein in remainder or reversion." Rev. Stat. of 1846 Ch. 109 Secs. 1, 2, and 3 ( *Comp. L. Secs. 416 to 418.*)

The terms " estate in possession " do not require actual possession, but are doubtless used here in the same sense as defined in the same revision *Ch. 62 § 8, Comp. L. §2,592.* " An estate in possession is where the owner has an immediate right to the possession of the land; an estate in ex-

pectancy is where the right to the possession is postponed to a future period."

Now, though the owner of a merely "expectant estate," as defined by the statute, would not be entitled to maintain a bill for partition; yet we think it clear that the "immediate right of possession" spoken of in defining estates in possession, does not mean the absolute right of possession as against all possible rights or powers given for special purposes and which have not been, but may or may not be, exerted or required for the accomplishment of such special purposes. A careful examination of the whole chapter, (*Rev. Stat. of 1846, Ch. 62,* entitled "Of the nature and qualities of estates in real property and the alienation thereof"), would seem to lead to the conclusion, that, within the meaning of the statute, the owner may be said to have an "estate in possession" unless there be some *intervening estate in the land,* the owner of which has a present paramount right of possession, as against him.

The statute has not materially altered the common law as to the distinction between estates in possession and those in expectancy, or future estates, so far, at least, as relates to any question here involved. And yet it is not denied that prior to the revision of 1846, Chapter 71 Section 7, (*Comp. L.,* §*2,904*), giving executors and administrators the right to the possession of real estate, the heirs of an intestate seized in fee became seized of an estate in possession immediately upon his death; though they took the estate subject to the debts and the rights of the administrators to sell the land for their payment. In *Kelly v. Kelly 41 N. H., 501,* it was in effect decided that the insolvency of the estate, which there gave the administrator the right to the rents and profits, did not change the estate of the heirs. And in Alabama, where by statute the administrator had power to rent the real estate of the deceased, and might recover rents accruing on a demise of the deceased, it was

held that until he should have asserted this right by notice to the tenant, or by actual suit, the heir might sue for and recover the rent falling due after the death of his ancestor. —*Masterson v. Girard's heirs, 10 Ala., 60.*

But the point has been twice expressly decided by this Court. In *Streeter v. Paton, 7 Mich., 341,* it was held that this statute authorizing executors and administrators to take possession of real estate, does not, before it has been exercised, exclude the possessory rights of heirs or devisees, but merely permits the executors or administrators to take possession if they see fit. The object of the statute and the evils to be remedied by it are there pointed out.

The same point was again decided in *Marvin v. Schilling, 12 Mich., 356,* which was an action of ejectment by the heir before the estate had been settled or the property ordered to be delivered over by the Probate Court. And, as it did not appear that the possession had been demanded by the administrator, it was held the heir had a right to maintain ejectment against a third person.

This right or power of the administrator to take possession for the purpose of settling the estate, and paying debts, though paramont to that of the heirs, when he sees fit to exercise it, does not, at least before it is exercised, create in the administrator an *intervening estate* between that of the ancestor and that of the heirs, converting the latter into an estate in expectancy; nor does its constitute an interest in him which he can sell or dispose of *as such,* being given to him only to enable him to receive the rents and profits while the estate is in process of settlement. See *Kline v. Moulton, 11 Mich., 370.* It is a mere statute power given to him only for the benefit of creditors, and properly to be exercised only as he shall find the exigencies of the estate may require. Doubtless if he should refuse to exercise the powers when the condition of the estate required it, he might, at the instance of credi-

tors, be compelled to do so, or be removed. And, by section 2,984 Compiled Laws, if he should neglect or unreasonably delay to apply for license to sell the real estate in a proper case, he would become personally liable for all loss, and his bond might be resorted to by the creditors.

But, on the other hand, when the personal estate is clearly and amply sufficient for the payment of the debts and expenses of administration, there can be no just reason for his taking the possession and keeping the heirs out of the enjoyment of the property till the final settlement of the estate.

What was the condition of this estate in this respect the record does not inform us, nor is it material; as the question whether the exigencies of the estate are such as to render it the duty of the administrators to take possession, (so long as they have not done so), is one which belongs, in the first instance, at least, to the Probate Courts, and cannot be litigated in this suit.

But it is urged that if the heirs are allowed to have partition, before the estate is finally settled and the debts paid, the administrators may, without regard to the partition, still take and sell the land for the payment of debts and the expenses of administration, thereby rendering the partition nugatory, and leaving the heirs to resort to another partition or some proceeding for contribution after the estate is settled.

This is true. But it was equally true, prior to the statute giving the administrators the right to take possession. Such is the law in many, if not most, of the States; and yet it is admitted that in those States, as well as in this prior to this statute, the heirs were nevertheless entitled to partition before the settlement of the estate or the payment of debts, though the laws required them to have an estate in possession to maintain the suit.

The objection, therefore, raised by the demurrer is not well taken.

We see no ground for the objection that the partition is erroneous, in so far as it was made in pursuance of the special instructions to the commissioners, that in making the partition, respect should be had to the voluntary partition made between the defendants, so far as could be done without prejudice to the just rights and interests of the complainants, so that, as far as practicable, each of the shares, made by such voluntary partition, should be made to contribute like and equal proportions.

The defendants had deliberately assumed to divide up and partition among themselves the entire estate in defiance of the rights of the complainants, their co-tenants, and had mutually executed deeds to each other, which they had put upon record, to carry that partition into effect. This is not simply the case of one tenant in common conveying his interest in a part only of the lands held in common; but an attempt of all the heirs except the complainants to appropriate and divide the whole estate among themselves; and the transaction is to be considered as a whole.

The transaction, as a whole, was wrongful and illegal as against the complainants, and cannot be allowed to prejudice their rights in any respect, nor can the defendants be allowed to gain any advantage by such wrongful acts.

The complainants, to obtain their rights in the property, were *compelled* to treat the transaction as *absolutely* void so far as their one-ninth interest was involved; and they were not bound by it nor under any obligation to ratify it in any part or particular. They were entitled to treat the whole as void, and to proceed for a partition in all respects upon the same principles as if the pretended amicable partition had never been made. They were not, however, bound to insist upon all their rights to the full extent; and might assent to have their share set off in such manner as to accommodate it, as far as practicable to the partition attempted by the defendants. And if the Court, in the pro-

gress of the cause, upon inquiry into the amount and condition of the estate to be divided, should find it practicable and fair to all parties to assign to the complainants their share of equal value, and in a shape equally advantageous to them, by setting it off ratably from the respective shares of each of the defendants, as fixed by them on the amicable partition, we can see no just ground on which the defendants could have any right to complain. The Court saw fit to adopt this course; and nothing appearing to the contrary, we are bound to presume that it was done either by consent of the complainants, or upon proper inquiry into the amount and condition of the property, and because it was found to be fair and just to all parties.

The record furnishes strong reason for the inference that the complainants did not oppose this mode of setting off their share. But whether this be so or not, the complainants and all the defendants, except the appellant, seem to be satisfied with the partition, and have not appealed. And the appellant has failed to show that the decree is unfair in any respect, as to him.

The result is that the partition made by the defendants has been disturbed as little as possible consistent with the rights of the complainants. If the complainants are satisfied, it is difficult to see on what ground the defendants can complain. Their deeds, though not binding upon the complainants—their co-tenants,—were valid and binding as between themselves.—See *Bartlet v. Harlow, 12 Mass. 348; Varnum v. Abbot, Id. 474; Porter v. Hill, 9 Id. 34; Baldwin v. Whiting, 13 Id. 57; Cutting v. Rockwood, 2 Pick. 443; Nichols v. Smith, 22 Pick. 316; Cogswell v. Reed, 12 Me. 198; Johnson v. Stevens, 7 Cush. 431; Smith v. Benson, 9 Vt. 138; Cox v. McMullin, 14 Grattan 82; McKee v. Barly, 11 Id. 340; Holcomb v. Coryell, 3 Stock. N. J. 548; Great Falls Co. v. Worster, 15 N. H. 449;*

*Whitton v. Whitton, 38 N. H. 127 ; Challefoux v. Ducharme, 4 Wis. 554.*

The appellant and the other defendants had the benefit of a similar estoppel in this case as to the lots on the Guoin farm in which the father of the complainants had, prior to any attempted partition, conveyed his interest to the appellant, the value of which was deducted from the aggregate value of the share of the complainants.

But it is further objected that, "if the partition deeds were valid as between the seven heirs, (the defendants), who executed them, then those heirs were not tenants in common as to the seven-ninths of the estate which they had inherited, and the decree is void and without jurisdiction, so far as it assumes to partition the seven-ninths among them."

The answer to this objection is to be found in the principles already stated. The deeds, though valid as between the parties who made them, operating between them by way of estoppel, were not binding upon the complainants—their co-tenants—who, therefore, had a right, by their bill, to treat them as co-tenants in common throughout, as if the deeds had never been made.

As between themselves, while standing upon the amicable partition alone, the defendants were not tenants in common. But as to the complainants, who were no parties to that partition, and in this suit instituted by them for partition, the whole real estate in which they were co-tenants must be treated as the subject of partition, and the Court must have the right to deal with the whole as an aggregate, and to parcel it into such shares as the rights and interests of all the parties may require, and must therefore be at liberty to treat the defendants as co-tenants in common as between themselves, disregarding or remodeling, as far as necessary to secure a fair partition, any partial partition made between a portion only of the co-tenants. If this were not

so, the deeds would not only operate as an estoppel between the defendants themselves, but would also estop the complainants to the extent of the interest the defendants had in the property, and *compel* them (however injuriously it might affect their interests), to bring a separate suit for partition against each of the defendants, and to take their ninth interest ratably from the share of each, as fixed by amicable partition, *the very mode now complained of by the appellant.*

The considerations already stated in reference to the special instructions touching the deeds, apply equally to the plats made by the defendants upon the amicable partition which were confirmed by the decree.

Butler and Driggs were originally made parties defendants; but the suit was subsequently discontinued as to them; and it is now objected by the appellant that they were necessary parties, and the discontinuance irregular, and the suit for this reason defective.

The question sought to be raised by this objection,—whether a purchaser from one of several tenants in common of an undivided interest in a part only of the property held in common, acquires such a title as to make him a necessary party in a suit for partition brought by other tenants in common, does not properly arise upon this record. Since, if we admit that the question when properly presented should be decided in the affirmative, (upon which we express no opinion), the necessary facts to put Driggs and Butler in the position of such purchasers, are not stated in the record. The record discloses only the naked fact that the Sheriff of Wayne County executed a deed to them purporting to convey the interest of Theodore in certain specified lots. No authority is shown for the Sheriff to execute such a deed, nor does it appear that he had, or purported to have, any authority whatever. And there is, therefore, nothing to show that they were

19 MICH.—Q.

ever necessary parties to the suit, upon any view of the question above stated, nor that the rights of any of the defendants could have been prejudiced by the discontinuance.

The last objection urged by the appellant is, "that the proceedings by which Alice M. Yates was made a defendant after the preliminary decree and the report of the commissioners, were irregular."

We do not see the force of this objection. *Prima facie*, as the widow of James J. Campau, she would be entitled to dower in the one ninth of the estate claimed by the complainants. She was therefore a proper, and we are inclined to think, a necessary party. An objection might have been made in the earlier stages of the proceedings, that she had not been made a party; but we see none which could properly have been made to her being allowed, on her own petition, to be made a defendant even in that stage of the case, she assenting, as she did, to all the proceedings had, and to a decree confining her dower to the premises set off to complainants.

The decree of the Circuit Court in Chancery must be affirmed with costs, and the record remitted to that Court for the execution of the decree and any further proceedings for carrying it into effect.

The other Justices concurred.