## JONES vs. BILLSTEIN and another.

STATUTE OF LIMITATIONS.— ADMINISTRATOR AND HEIR:  THEIR RIGHTS
    AS TO REAL ESTATE.  *When heir must sue to recover land sold by
    administrator.*

1. A statute of limitation does not commence to run against any person
   until his right to bring an action has accrued.
2. At the common law, real estate descended to the heir immediately upon
   the death of the ancestor, and his right of entry was then perfect.
3. Under the statutes of this state (R. S., ch. 100, sec. 7), the administrator
   may take possession of the real estate, and of the rents and profits
   thereof, if he thinks proper or the probate court so order, but the law
   does not make it imperative upon him to do so.
4. The power to sell real property to pay debts of the estate is entirely
   separate from the power to take and hold possession of the land and
   take the rents and profits thereof; and they may be exercised inde-
   pendently of each other.
5. Until the administrator actually takes possession of real property, the
   right of the heir to the possession remains unimpaired.
6. The right of the heir to bring an action to recover possession
   of land sold and conveyed by the administrator as under a license of
   the probate court, accrues at the time when the purchaser obtains
   possession under the sale, and not merely upon a final settlement of
   the estate.
7. If the heir does not bring his action within five years after such right
   of action accrues, he is barred by sec. 60, ch. 94, R. S.
8. In the absence of this statute, the right of the heir would be barred by
   the general statute of limitations (R. S., ch. 138, secs. 6, 8, 10), after
   ten years adverse possession under the administrator's deed.
9. In case the heir is a minor or under other legal disability when his
   right of action accrues, he is allowed, by both the above mentioned
   statutes, five years for bringing his action after the disability is
   removed.

APPEAL from the Circuit Court for *Winnebago* County.

Ejectment, commenced in 1869.  Judgment for the defend-
ants; from which the plaintiff appealed.  The facts are suffi-
ciently stated in the opinion.

*Gabe Bouck*, for appellant:

The only question in the case is, whether the action is *barred*

either by sec. 50, ch. 65, R. S. 1849 (sec. 60, ch. 94, R. S. 1858), or by the general statute of limitations. 1. Until the estate was settled or delivered over by order of court, the heirs had no right of entry against either the administrators or persons claiming under them. Sec. 7, ch. 69, R. S. 1849 ; sec. 7, ch. 100, R, S. 1858 ; *Meeks v. Hahn*, 20 Cal., 620 ; and adjudications of this court. Although an administrator's deed is invalid and defeasible by the heirs, yet it conveys the rights which the administrator had. The administrator is entitled to possession, and his deed conveys at least that right ; it is a license to his grantee. Suppose the administrator takes possession of the real estate, makes an unauthorized sale, and puts his vendee in possession, and that then the heir commences ejectment against the grantee ; he cannot recover, because he has no right of entry. The grantee's entry is legal, being by authority from the adminisator, who is entitled to the possession. *Bergin v. McFarland*, 26 N. H., 533. The grantee in a void administrator's deed, being in possession under authority from the administrator, stands in the same position as the administrator, and takes no greater rights. *Constantine v. VanWinkle*, 6 Hill, 177. The intervention of a particular estate suspends the operation of the statute. Angell on Lim., § 372, 483. If a person having a life estate, or holding as tenant by the curtesy, conveys the land in fee, that does not terminate his estate, and the statute does not commence running until such estate is terminated. *Wells v. Prince*, 4 Mass., 67 ; *May's Heirs v. Hill*, 5 Littell, 307 ; *Gill v. Fautleroy*, 8 B. Mon., 177 ; 7 id., 401 ; Angell on Lim., § 372. And in such cases the remainder man cannot bring suit. *Gernet v. Lynn*, 31 Pa. St., 94 ; *Jewett v. Jewett*, 10 Gray, 31 ; *Bruen v. Burrage*, 31 N. J., 21 ; 29 Ga., 355 ; 37 Miss., 164 ; 1 Head, 276 ; 15 Vt., 344 ; 2 Jones' Law, 113 ; 8 id., 229 ; 10 Bosw., 100 ; 5 Cow., 95 ; 4. Johns., 390 ; 8 id., 202 ; 4 Wend., 58 ; 2 Barb. Ch., 314 ; Willard on Real Estate, 350 ; 2 Vroom, 21 ; 52 Me., 31. It may be said that all this is true, yet the language of the statute is positive, and must govern. The

Jones vs. Billstein and another.

answer is, that we come within the exception (sec. 51 of said ch. 65, and sec. 61 of said ch. 94), of persons "under legal disability to sue." *Jewett v. Jewett*, 10 Gray, 31. This limitation law must be governed by the general principle of limitation laws. The statute does not run until there are parties "capable of suing and being sued." The validity of all limitation laws is based upon the theory that a legal remedy is afforded for a reasonable length of time. Cooley on Cons. Lim., 365. 2. It has been held in case of an administrator's sale, that "no property passed until a deed was given, and until then, in a legal sense, *there was no sale.*" *Macy v. Raymond*, 9 Pick., 285. But there is not the slightest authority for the administrators to give a deed until the sale is confirmed. These deeds were given before confirmation of the sale. Hence there was no deed, and therefore, in a legal sense, no sale; and therefore there was nothing upon which the five years limitation could run. See also *Chadbourne v. Rackliff*, 30 Me., 354. 3. By sec. 60, ch. 94, R. S., the five years limitation applies only to lands "sold by an executor or administrator *under the provisions of this chapter.*" Is there a sale under the provisions of this chapter when the administrator executes a deed without the slightest authority of law? 4. There is nothing in the Michigan decisions inconsistent with the positions here taken. They merely hold that it is discretionary with the administrator whether he will take possession, and that if he does not the heir is entitled to the possession as against a stranger. The right of the heir is asserted as against every person "except the administrator *or some one in possession under him.*" 12 Mich., 361.

*Moses Hooper*, for respondents.*

---

* The full and elaborate argument of counsel for the respondents presents the same view of the statutes as is presented at length in the opinion of the court; and is omitted for that reason. An additional point made was, that by ch. 151, Laws of 1851, the period to which the time allowed for settling an estate could be extended was six years; that in this case the six years expired in 1856; that even if it were true that the administrator had a possessory right in the land until that time, so that the heirs could not sue, yet this right ceased at the end of the six years, there not being even any order of court attempting to extend the life of the administration beyond that time; that even though

LYON, J.   This is an action to recover the possession of certain real estate.   The plaintiff claims the same as heir-at-law of Harvey Jones, late of Winnebago county, who died in 1849, intestate, leaving surviving him three children, of whom the plaintiff is one.   Afterwards Loyal H. Jones and Erastus W. Drury were appointed administrators of the estate of the deceased by the county court of said county, and duly qualified as such.   In May, 1852, upon petition of such administrators, license was granted to them by such county court to sell certain of the real estate of which the said Harvey Jones died seized, including that described in the complaint, for the purpose of paying claims against the estate.   Pursuant to such license, the administrators sold the premises in controversy to one Edward Smith, and conveyed a portion thereof to him in 1853, and the balance in 1856, by the usual administrators' deeds.   This sale was confirmed by the county court, August 27th, 1858.   It does not appear that the administrators ever went into possession of said premises, but Smith took possession immediately after the same were conveyed to him, and he and those claiming under him have been in the actual possession and occupancy thereof ever since, claiming title thereto by virtue of such administrators' deeds.   The defendants are in possession of the premises as tenants of the grantee of Smith. November 10th, 1864, such county court made an order discharging Jones and Drury as administrators, and appointing new administrators of such estate *de bonis non.*   It does not appear that the estate has ever been fully settled.   The plaintiff was a minor when his father died, but became twenty-one years of age in December, 1858; and this action was commenced November 9th, 1869.   The plaintiff has been a resi-

.the administrators continued in fact to act as such, that could not give them any right as against a positive statute, and they could not take advantage of their own wrong; that after that time, therefore, the purchaser of the land could not have defended against the heir as assignee of the possessory right of the administrators; and that as the plaintiff became of age in 1858, the statute had run against him before this action was commenced.
REP.

dent of the county of Winnebago from the time he became nineteen years of age.

It is conceded that, by reason of certain irregularities in the proceedings preliminary thereto, the deeds executed by the administrators to Smith were invalid, and did not convey to Smith the title to the premises in controversy.

The circuit court gave judgment for the defendants, from which the plaintiff has appealed.

The defendants insist that the plaintiff is barred from recovering these premises in this action by two statutes of limitation, either of which, they claim, constitutes a complete bar to such recovery. One of these statutes is contained in chapter 138 of the Revised Statutes, sections 6, 8 and 10, which provides substantially that an adverse possession of lands of ten years under claim of title, founding such claim on some written instrument as being a conveyance thereof, shall be a bar to a recovery of the lands thus held adversely. The other statute is as follows: "No action for the recovery of any estate sold by an executor or administrator under the provisions of this chapter, shall be maintained by any heir, or other person claiming under the deceased testator or intestate, unless it be commenced within five years next after the sale; and no action for any estate sold in like manner by a guardian, shall be maintained by the ward, or by any person claiming under him, unless it be commenced within five years next after the termination of the guardianship." R. S., ch. 94, sec. 60, which is a re-enactment of sec. 50, ch. 65 of the Revised Statutes of 1849. The next section makes an exception in favor of "minors or others under legal disability to sue at the time when the right of action shall first accrue," and gives to such persons the right to commence the action within five years after the removal of the disability.

The general statute of limitations before mentioned (chap. 138, R. S.) also makes an exception in favor of those persons entitled to commence an action for the recovery of real property, or to make an entry or defense founded on the title to

real property, who at the time such title' shall first descend or accrue are either minors, or insane, or prisoners in certain cases, or married women; and gives to such persons five years after such disability ceases, or after the death of the person entitled who shall die under such disability, within which to commence the action.

Of course the plaintiff can claim nothing, under either of these statutes, by reason of having been a minor when the administrators sold the premises, because he became twenty-one years of age nearly eleven years before this action was commenced. But it is claimed by the plaintiff that neither of these statutes could commence to run against him until a right of action accrued to him to recover the land, and that no right of action did accrue to him until the administrators who made the sale were discharged. We have already seen that they were discharged less than five years before the action was commenced.

It is doubtless a correct legal proposition, that until the plaintiff had a right of action to recover the premises in controversy, the statutes of limitation did not commence to run against him; and if he could not have maintained such action until the administrators who sold the premises were discharged, then this action is not barred by those statutes, or by either of them. I think that this proposition was fully demonstrated on the argument by the counsel for the plaintiff.

The controlling question then is, At what time did the plaintiff's right of action accrue? As before stated, the theory of the plaintiff is, that it accrued when the administrators were discharged; and the theory of the defendants is, that it accrued when the administrators sold and conveyed the premises to Smith, in 1853 and 1856.

The question has been argued with great ability by the learned counsel for the respective parties, and they seem to have cited all the authorities which have any direct bearing upon it.

In the light of those arguments and authorities we have endeavored to bestow upon the question that investigation and

deliberation which its importance seemed to demand; and we have reached the conclusion that the theory of the defendants is the correct one; that the plaintiff's right of action accrued when the administrators sold and conveyed the premises in controversy to Smith; that this action is barred by either of the statutes of limitation before mentioned; and that, therefore, the judgment of the circuit court was correct and should be affirmed.

I will now proceed to state, in a general way, some of the reasons that have impelled our minds to this conclusion.

There can be no doubt but that by the common law the real estate descended to the heir immediately upon the death of the ancestor, and that his right of entry was then perfect. The personal representative of the deceased — the executor or administrator, as such — had nothing whatever to do with the lands of which the deceased died seized, or with the rents and profits thereof. These belonged absolutely to the heir.

The only changes that have been made in the common law in this respect are made by the provisions of our statutes, which are: 1st. That the executor or administrator shall return to the proper court an inventory of the real estate of the deceased. R. S., ch. 100, sec. 1. 2nd. If the personal estate is insufficient to pay the debts of the deceased and the expenses of administration, the executor or administrator, upon being licensed by the court so to do, may sell the real estate. Chap. 94. 3d. "The executor or administrator shall have the right to the possession of all the real as well as personal estate of the deceased, and may receive the rents, issues and profits of the real estate, until the estate shall have been settled, or until delivered over by order of the county court to the heirs or devisees, and shall keep in good tenantable repair all houses, buildings and fences thereon, which are under his control." Ch. 100, sec. 7.

All of these provisions are also contained in the Revised Statutes of 1849.

It is claimed that the foregoing provision contained in section 7, which gives to the executor or administrator the right to the posses-

sion of the real estate and the power to receive the rents, issues and profits thereof, necessarily deprives the heir of such right of possession until such time as the estate is settled or delivered over to him by order of the court. But we think that no such result necessarily follows. As we understand this statute, it gives the personal representative the power to reduce the real estate to his actual possession should he think proper, or should the probate court direct him so to do, but it does not imperatively require him to take possession thereof, and until he does so the common law right of the heir to the possession remains unimpaired. And in this case we think that the plaintiff's right of action accrued as soon as Smith, the grantee in the administrators' deed, went into possession.

Our statutes on this subject seem to have been copied from those of Michigan, and in construing them we have adopted the reasoning and followed the decisions of the supreme court of that state, in *Streeter v. Paton*, 7 Mich., 341; and *Marvin v. Schilling*, 12 Mich., 356. In the former of these cases the court say: "It is the duty of the personal representative to take possession of the real estate when it, or the rents and profits, may be needed in the settlement of the estate; but when this is not the case, although he may do so under the statute, we do not think it imperative on him, nor can we see any reason why it should be, as the personal and real estate under our present laws go to the same persons. The personal estate may be more than ample for all the purposes of administration, and years may be required in settling the estate. It would be a harsh construction of the statute that would deprive the heir of the inheritance in the meantime." (p. 351.) See also *Campau v. Campau*, 19 Mich., 116.

The statutes of Alabama on this subject, which are very similar to . ours, have received the same construction in that state; and it is held that where the power to rent or sell the real estate is not asserted or exercised by the administrator,

the heir is entitled to the estate and its incidents, as at common law. *Masterson v. Girard's Heirs*, 10 Ala., 60.

There are other reasons than these to which I have alluded, which tend to support the construction which we give to the statute under consideration. In the first place, to give it the opposite construction would render sec. 60, chap. 94, inoperative in almost every case. By its terms the heir is barred unless he commences his action within five years " next after the sale." Now, if the statute does not commence to run against the heir " until the estate shall have been settled or until delivered over to him by order of the court," then, in but very few cases would its operation commence at the time of the sale.

It is not reasonable to suppose that the legislature intended to fix a time at which the limitation should commence by one enactment, and then by another enactment make it impossible in most cases that it should then commence.

The counsel for the defendant very forcibly asks: Why pass a statute of limitation, and then make an exception in favor of all against whom the limitation could be pleaded? We think that the legislature has not committed that absurdity. The section (sec. 60, chap. 94) was not carelessly or ignorantly drawn. In prescribing the limitation upon guardian's sales, it fixes the commencement thereof at the termination of the guardianship, and not, as in the case of sales by executors and administrators, at the time of the sale. The reason for this distinction in the two cases is obvious. In the one case the legal possession of the land is in the guardian until the termination of the guardianship, and so the statute fixes that as the t'me when the limitation shall commence to run; while in the other case the time fixed for the limitation period to commence is the time of sale, and this, doubtless, for the reason that the title and right of possession is in the heir, and the sale operates as a disseizin of the heir, and not merely as a conveyance of the administrator's right of possession.

There is another provision of the statute which strongly corroborates the views here expressed. I refer to R. S., ch. 135, sec. 6. It is as follows: "In all actions for the recovery of real property, if the plaintiff shall die before final judgment, his heir, within such time as the court shall allow, may appear and prosecute the action in the same manner as if the action had been originally commenced by him; or the action may be prosecuted by the executor or administrator for the benefit of the heir or the creditors of the deceased."

It is not to be presumed that the legislature intended by that section to preserve a possessory action after the death of the plaintiff, and allow it to be prosecuted by one who has no right of possession to the property involved in the action. Were it true that the heir has no right to the possession of the realty until the estate be settled, this enactment doubtless would simply have preserved the action in favor of the personal representative.

The counsel for the plaintiff has called our attention to the cases of *Meeks v. Hahn*, 20 Cal., 620; and *Bergin v. McFarland*, 6 Foster (26 N. H.), 533; and insists that they hold a different doctrine. Those cases do hold a different doctrine, but they are decided under statutes which made it the imperative duty of the executor or administrator to take the possession of the real as well as the personal estate of the deceased, and are therefore not applicable to our statute.

But it is said by counsel for the plaintiff, that the administrators had the right to the possession of the real estate, and that they conveyed at least that right to Smith; and inasmuch as the administrators could not have maintained an action to oust Smith, the plaintiff could not do so while the administration continued, and that, therefore, the plaintiff's right of action did not accrue until the administrators were discharged, in 1864.

This argument is ingenious and plausible, but a little scrutiny will, I think, show that it is not sound. The statute conferred upon the administrators two powers, to wit, the power to take

possession of the real estate, and the power to sell it. These powers are entirely separate and distinct, and the latter is in no manner dependent upon the former. The power to sell the real estate for the payment of debts was conferred upon the personal representative by statute, in England and in many of our states, long before the power to take the rents and profits thereof was given (*Bergin v. McFarland, supra*); and until sale thereof, the heir was entitled to the exclusive possession, and could maintain actions against those who interfered with it, precisely as the ancestor might have done.

These two powers being separate and distinct, either may be exercised without reference to the other. The administrator may enter into possession without selling, and may sell without taking possession; and if he sells the realty without having taken the possession, his deed conveys the possession, it is true, but not the possession of the administrator, for he has none to convey. It conveys the possession of the heir, and thus operates as a disseizin of the heir. If the sale is lawfully made, the heir is bound by it. He is then lawfully disseized. But if not lawfully made, he has his action at once, to recover the possession of the premises of which he has been unlawfully disseized.

It is also said that the limitation prescribed by sec. 60 of ch. 94 of the Revised Statutes did not commence to run when the deeds were executed by the administrators to Smith, because by that statute the limitation only runs where the sale has been made under the provisions of that chapter, and those sales were not so made, but on the contrary many of the preliminary provisions therein contained were not complied with.

This objection is founded upon the proposition that all of the material requirements of the statute must be complied with, or there can be no sale upon which the limitation can operate. This is clearly untenable. The object of the statute is to create a bar to an action based upon such non-compliance with the requirements of the statute. Any other construction would ren-

der the provision nugatory. *Holmes v. Beal,* 9 Cush., 223. If the tenant must show a valid sale before he can have any benefit of the limitation, the limitation does not benefit him, because a valid sale establishes his right to the premises without regard to any statute of limitations. Here there were a license, a sale and conveyances, and these were sufficient to put the statute in operation.

It is also said that this sale was made under the provisions of chap. 163 of the Laws of 1851, and that therefore the limitation of five years enacted in sec., 50 chap. 65 of the revised statutes of 1849, is not applicable to it. Inasmuch as the act of 1851 is simply an amendment to chap. 65, we are unable to see the force of the argument.

Other grounds of defense were alleged in the answer, and testimony was given upon the trial tending to prove such defenses. But, in the view we have taken of the case, it becomes unnecessary to comment upon them.

The judgment of the circuit court must be affirmed.

*By the Court.*— Judgment affirmed.