MARGARET NOON, Administratrix, *vs.* ANDREW FINNEGAN.

September 5, 1882.

**Real Estate of Intestate—Trespass—Action by Adm'r—Possession.—**
An administrator cannot maintain an action for trespass upon real property committed after the death of an intestate, unless he has first asserted his right under the statute by taking possession of such real property. But, if he takes possession of such real property, he may then maintain an action for a trespass committed thereon before he took possession, and after the death of his decedent. In such case his possession, as well as his letters of administration, relate back to the death of his intestate.

Appeal by plaintiff from a judgment of the district court for Hennepin county, entered on an order made by *Young,* J., dismissing the action with costs, on the ground that the complaint does not state facts sufficient to constitute a cause of action. The material defects of the complaint are stated in the opinion.

*Beebe & Rossman,* for appellant, cited Gen. St. 1878, c. 77, § 5; c. 52, § 5; *Miller* v. *Hoberg,* 22 Minn. 249; *Cunningham* v. *Ashley,* 45 Cal. 485; *Babcock* v. *Booth,* 2 Hill, 181; *Valentine* v. *Jackson,* 9 Wend.,

302; *Woodward* v. *Howard*, 13 Wis. 557; *Knox* v. *Bigelow*, 15 Wis. 415; *Hei* v. *Heller*, 53 Wis. 415; *Gary's*. Probate Law, § 339.

*F. Hooker* and *C. P. Biddle*, for respondent.

MITCHELL, J. This action was brought by plaintiff, as administratrix of the estate of John Noon, deceased, to recover damages for trespass committed upon the real estate of her intestate *subsequent* to his decease. The complaint does not allege that plaintiff has ever asserted her right as administratrix by taking possession of the real estate of the intestate. Neither does it allege that the heirs have not gone into possession, nor that the land is vacant or unoccupied. The action was, on motion of defendant, dismissed on the pleadings, and from the judgment entered thereon plaintiff appeals. The case, therefore, presents squarely the question, whether a personal representative who has never asserted his right under the statute by taking possession of the real estate of the deceased, can maintain an action for trespass committed thereon *post mortem decedentis?*

At common law such an action could be maintained only by the heir or devisee. But the contention is that this rule is now changed by statute. The first statute which plaintiff cites as authority for her right to maintain this action is Gen. St. 1878, *c.* 52, § 6, which reads as follows: "The executor or administrator has a right to the possession of all the real, as well as personal estate of the deceased. * * *" We adopted this statute from Wisconsin, which had previously obtained it from Michigan. In these states it has been decided that this statute is not imperative, but merely permissive, and that it does not exclude the possessory right of heirs or devisees; that the right of possession is in the heir until the personal representative asserts his right and takes possession; that, on the death of the intestate, the lands descend, as at common-law, to his heirs, who may maintain ejectment against third persons, if the personal representative has not taken possession; that the personal representative takes neither title to nor interest in the land, except the mere right to take possession during administration, if he sees fit to do so. *Streeter* v. *Paton*, 7 Mich. 341; *Marvin* v. *Schilling*, 12 Mich. 356; *Campau* v. *Campau*, 19 Mich. 116; *Edwards* v. *Evans*, 16 Wis. 193; *Jones* v. *Billstein*, 28 Wis. 221; *Flood* v. *Pilgrim*, 32 Wis. 376; *Marsh* v. *B'd*

*of Sup'rs of Waupaca Co.,* 38 Wis. 250. This court has also held that the right of possession to the real estate is in the heir until the personal representative asserts his right to it; that the title vests in the heir upon the death of the ancestor. *Paine* v. *First Div., etc., R. Co.,* 14 Minn. 65; *State* v. *Ramsey Co. Probate Court,* 25 Minn. 22. The principle running through all these cases is that the title to real estate vests, notwithstanding this statute, in the heir at the death of the ancestor; that he has the right to the possession, as before, subject only to the right of the personal representative, if he see fit to assert it; that the personal representative has no title to or interest in the real estate, save only the privilege to claim the possession during administration; and that, until he asserts this right, the rights of the heirs or devisees are unaffected by the statute. It is elementary that, to entitle a party to maintain an action for trespass, he must have had either the possession or title. In the present case the plaintiff does not allege the former, and certainly had not the latter.

The following propositions are, in our opinion, fairly and naturally deducible from the views already expressed: (1) The possession of real estate *prima facie* devolves upon the heirs or devisees. (2) The personal representative *may* take possession. (3) Until he does, the heirs or devisees alone can sue for trespasses *post mortem decedentis.* (4) When he does take possession, the personal representative must sue for the trespass, his possession relating back to the death of his decedent, unless the heirs or devisees have already sued. (5) If the heirs or devisees have already commenced suit, the personal representative, when he takes possession, has a right to be substituted. If they have recovered before he takes possession, upon his taking possession, if the amount recovered is needed to pay debts, he would be entitled to the benefit of the judgment, or, if it has been already collected by the heirs or devisees, to demand that the amount be paid over to him. (6) If it appear that the land is vacant, the bringing of the action by the personal representative for the trespass would amount or be equivalent to taking possession. Our conclusion, therefore, is that there is nothing in this statute that will help out the complaint in this action.

But plaintiff also cites Gen. St. 1878, *c*. 77, § 5, which reads: "No person is liable to an action as executor of his own wrong for having taken, received, or interfered with the property of a deceased person, but is responsible to the executor as [or] general or special administrator of such deceased person for the value of all property so taken or received, and for all damages caused by his acts to the estate of the deceased." But we are clear that the consideration of the history and object of this statute will show that it has no bearing whatever upon the question of plaintiff's right to maintain this action. This statute we also inherited from the territory of Wisconsin, which, doubtless, copied it from New York, where it was first found in the Revised Statutes of 1830. (The word "as," after the word "executor," is evidently a clerical mistake, and must be read "*or*.") The only subject of which it treats is the liability of executors in their own wrong, or executors "*de son tort*," as they are usually called. An executor *de son tort* was one who, being neither executor nor administrator, interferes with the goods of the deceased; or, as defined by one author, "one who takes upon himself the office of executor by intrusion, not being so constituted by the deceased, nor, for want of such constitution, substituted by the court to administer." Such an intermeddler was, at common law, held subject to all the liabilities of an executor, and estopped by his own acts from denying that he was executor in fact. No intermeddling with the lands of the deceased would charge a person as executor of his own wrong, such interference being a wrong only to the heir or devisee. At common law, when a person had so intermeddled with the personal estate of the deceased as to become an executor *de son tort*, he thereby became liable, not only to an action by the rightful executor or administrator, but also to be sued by any creditor or legatee. The judgment rendered against him in such action was that plaintiff do recover his debt and costs, to be levied *out of the assets of the testator*, if the defendant had so much, but, if not, out of the defendant's own goods. The judgment, when collected, was exclusively for the benefit of the creditor or legatee who brought the action.

These, and other illustrations that might be cited, show that the common-law doctrines of executors *de son tort* were inconsistent with

the general principles and policy of the statutes of most of the American states regulating the administration and settlement of the estates of deceased persons, which are usually to the effect that all the assets of the estates shall be controlled exclusively by the personal representative, and by him distributed among all the creditors and legatees or distributees equally, in the order of their priority as fixed by statute. Hence, in some states, the courts, even in the absence of statute, refused to recognize the office of executor in his own wrong. Other states, like our own, have abolished it by statute. This was the sole purpose of this or similar statutes. They abolish the office of executor of his own wrong, if it can be called an office, and place such an intermeddler with the goods of a deceased person upon a level with any ordinary trespasser. The statute simply takes away the right of action which the creditor or legatee previously would have had against the trespasser, and vests it exclusively in the personal representative, so that the damages, when recovered, may be by him administered like any other assets of the estate. It was never designed to give to the personal representative a right of action for any acts for which, previously, neither he, nor a creditor, nor a legatee could have maintained an action. That it could never have been designed to have any such effect in the state of New York, where it was adopted over fifty years ago, is evident from the fact that in that state the personal representative has never had the right to the possession of the real property during administration; and hence an action for trespass upon it, committed after the death of the owner, would necessarily have to be brought by the heirs or devisees.

If it be suggested that this construction of the statute is based upon a narrow common-law definition of an executor of his own wrong, by which it was limited to an intermeddler with the personal estate, and which is not now applicable to a state of things where the personal representative may have the possession of the realty as well as the personalty, it may be answered that this common-law definition was certainly appropriate and correct under the condition of things which existed when the statute was first enacted, and was the only one which the law-makers could have had in mind. Moreover, whatever may be the character of the property, the intermeddling with which will now

make the wrong-doer responsible under the statute to the lawful executor or administrator, it must naturally and necessarily be limited to the property which is in the control or possession of such administrator or executor. The real estate, as we have seen, only becomes such upon the personal representative taking possession, under the privilege given him by statute. Until he does so, the rights of the heirs and devisees are the same as at common law.

The suggestion that, in case of insolvent estates, this construction of the statute might leave creditors remediless in case of trespass committed after the death of the decedent, is, we think, without force. It is well settled that, for certain purposes, letters of administration relate back to the time of the death of the intestate, so that an administrator may have an action for trespass or trover for the goods of the intestate taken before letters were granted him, and after the death of his intestate. As the statute now permits the personal representative to claim the possession of the real as well as the personal estate, there is no reason why, upon the same principle, the possession of the realty will not, under his letters of administration, also relate back to the death of the intestate, and thus enable him to maintain an action for trespass committed before he took possession, or even before his letters were issued.

Our conclusion, therefore, is that the complaint in this action was materially defective, and did not state a cause of action in the plaintiff.

Judgment affirmed.

GILFILLAN, C. J., *dissenting.* I think the plaintiff may maintain the action. Though the title to real estate does not vest in the executor, yet it is subject to the demands of administration. When necessary, the rents, issues, and profits, and the value, may be resorted to as a sort of secondary fund for payment of debts and legacies, and, with a view to that end, the statute vests in the executor the right to its possession, and to the rents, issues, and profits, and to have it sold when necessary. He may take such possession, and receive the rents, issues, and profits, in anticipation of their being

necessary for administration, and without showing that the necessity exists in fact. *Miller* v. *Holberg*, 22 Minn. 249.

The theory of the statute is that the entire estate, real and personal, as it exists at the time of the death, with the increase, shall be used; the personal property, with its increase, first, and then, if necessary, the rents, issues, and profits of the real estate, and the proceeds of its sale, in settling the estate and paying debts and legacies. This, of course, has to be done through the executor or administrator. It would seem inconsistent with this theory that in any case one might destroy or impair the value of the real estate, so that rents, issues, and profits should be prevented or diminished without any liability to the executor or administrator. I do not think it would be too liberal a construction of the statute, even leaving out section five of chapter 77, to hold that in such case the executor or administrator may recover for the damage done to the estate, to hold the amount recovered, as he would hold rents, issues, and profits, for payment of debts and legacies, if necessary, and, if not, for those entitled to the real estate. When construed with reference to the general tenor of the statute, I think that section conclusive of the right to recover. If the purpose of the section were merely to abolish the doctrine as to executors *de son tort*, the first two lines are sufficient, and the last three are unnecessary. They could hardly have been inserted merely to declare the right of the executor to sue for injuring or intermeddling with personal property, for that right existed at common law. The language imports something more than that, and, the statute being remedial, there is no apparent reason for attributing a meaning less than the language implies. It declares that, for interfering with the property, the person so interfering is responsible to the executor, or general or special administrator, of such deceased person for the value of all property so taken or received, and for all damages caused by his acts to the estate of deceased. The section does not specify either personal property or real property; it uses only the general terms "property" and "estate," words which include as well real as personal property. My construction of the section is that it intended to give the right of action for injuries to the "estate," of

whatever kind of property it may consist, and by whatever wrongful acts they may be caused. The rules of the common law as to actions for trespass upon the real estate have no application to the statutory right of action so given. If that is not the proper construction, then the executor or administrator can in no case recover for injuries to the real estate caused before he takes possession. There is no warrant in the statute, nor in the principles of the common law, so far as I can see, for the suggestion that, upon the executor or administrator resorting to the act, in many cases useless, inconvenient, and expensive, of taking possession of real estate, he may have an action for prior trespass.