ARNE BELAKJON, Respondent v. ANNA M. HILSTAD, Henry O. Olson, Albert E. Olson, Gena C. Hogenson, Klara E. Midstokke, and all other persons unknown claiming any estate or interest in or lien or incumbrance upon the property described in the complaint, whether as the heirs, devisees, or creditors of Gilbert Olson, Deceased, or otherwise, and Anna M. Hilstad, Henry O. Olson, Albert E. Olson, Gena C. Hogenson, and Klara E. Midstokke, Appellants.

(35 NW2d 637)

Opinion filed January 11, 1949.   Rehearing denied Jan. 28, 1949

*M. W. Duffy,* for appellants.

300

*Theo. B. Torkelson,* for respondent.

MORRIS, J. This is an action to quiet title to the SE¼ of Section 23, Township 129, Range 99, less two acres which had been conveyed for school purposes. The defendants answered claiming title to the property and included in their answer a counterclaim for the value of the use and occupation of the premises in the sum of $2200. The counterclaim was challenged by reply of the plaintiff and issue was thus joined with respect to the title to the land and the value of its use and occupation by the plaintiff in event his title failed.

Upon motion of the plaintiff the defendants were required to and did deposit with the clerk of the district court $672.26 pursuant to the provisions of § 57-4510, 1947 Supplement to the North Dakota Revised Code, and (Chapter 314, Session Laws of North Dakota 1945). On September 30, 1947 the court signed findings of fact, conclusions of law and order for judgment in which he determined that the defendants were entitled to have title to the property quieted in them as against claims of the plaintiff. He also provided for the disposition of the deposit. Judgment was entered upon these findings on October 6, 1947 whereupon the defendants on October 23, 1947 served on plaintiff's attorney notice of entry of judgment and a retaxation of costs. On the same day plaintiff's attorney served notice of motion for amendment of the findings and judgment. The court

having heard this motion entered an order granting it on March 27, 1948 and signed amended findings of fact, conclusions of law, and order for judgment upon which an amended judgment was entered April 14, 1948.

The defendants appealed from the original judgment, the order granting the amendment of findings of fact, conclusions of law, and order for judgment, and from the amended judgment. The notice of appeal further specifies five questions of fact upon which the defendants seek review and retrial in the Supreme Court. A trial de novo is not demanded with respect to the entire record.

Unchallenged findings of the trial court show that Gilbert Olson acquired the property in question by warranty deed on March 22, 1909. He failed to pay the taxes for the year 1930 and the land was sold to Bowman County at tax sale on December 8, 1931. He also failed to pay taxes for subsequent years and on June 14, 1938 a purported tax deed was issued to Bowman County. On December 7, 1939 the county sold the land under contract for deed to Iver Johnson for $243.58. Deed was issued by the county pursuant to this contract on November 17, 1942. On April 9, 1946 Iver Johnson conveyed the land by quit claim deed to the plaintiff for a consideration of $1200. The defendants are all of the heirs at law of Gilbert Olson and may maintain an action to quiet title in that capacity. Section 30–2401 NDRC 1943. Blakemore v. Roberts, 12 ND 394, 96 NW 1029.

The unchallenged findings also show that tax deed proceedings were defective and failed to vest title to the property in Bowman County because the notice of expiration of period of redemption included in the amount necessary to redeem taxes that had not been delinquent for three years. Service of the notice was defective because of failure to serve the same upon the tenant in possession. There is no issue upon this appeal with respect to the failure of the proceedings to vest title in Bowman County.

The right of the trial court to amend the findings and judgment upon motion of the plaintiff was challenged by the defendants and appellants.

The right of the trial court to amend findings and judgment

is provided for in the following section of the NDRC 1943, § 28–1605: "Upon motion of a party made not later than ten days after notice of entry of judgment, the court may amend its findings or make additional findings and may amend the judgment accordingly. When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings thereafter may be raised whether or not the party raising the question has made in the district court an objection to such findings or has made a motion to amend them or a motion for judgment." The motion to amend was made within the time specified by the above section. The trial court therefore had power to make the amendment. Whether he erred in making specific findings will be considered in connection with the points challenged by the appellants.

With respect to the value of the use and occupation of the premises the original findings said: "That as to the rent or value of the use and occupation of said premises, this court makes no findings or final determination and without prejudice to any appropriate action or proceeding to determine such issue. This for the reason that all persons concerned are not parties to this action."

The amended conclusions of law provide: "Plaintiff is not liable to the defendants for use and occupation of the premises, solely by reason of having occupied the same under a defective title."

The plaintiff challenges the right of the defendants, as heirs of Gilbert Olson, to maintain an action by way of counterclaim or otherwise for the recovery of the value of the use and occupation of lands belonging to their deceased ancestor, accruing after his death, in the absence of proceedings to probate his estate.

In support of his position the plaintiff points to the following statutory provision of our probate procedure. Section 30–1304, NDRC 1943 provides that the executor or administrator is entitled to the possession of all the real and personal property of the decedent except the homestead and other property reserved by law to the surviving spouse or children. It then provides that

"He must protect the real property from waste or other injury and collect the rents and profits thereof until ordered to surrender the same, . . . ."

Under § 30-2401, "The heirs or devisees of a decedent, themselves or jointly with the executor or administrator, may maintain an action for the possession of real estate or for the purpose of quieting title to the same against anyone except the executor or administrator. For the purpose of bringing suits to quiet title or for partition of such estate, the possession of the executor or administrator is the possession of the heirs or devisees. Such possession by the heirs or devisees is subject, however, to the possession of the executor or administrator for the purposes of administration as provided in this title."

The deceased died in July 1942 and the defendants are his sole heirs. The plaintiff argues that under the above statutes and the facts as they are pleaded and proven in this case, the defendants are not entitled to maintain an action for the recovery of the use and occupation of the premises involved in this litigation. He asserts that the only relief available to them is a decree quieting title and giving them possession.

The primary right of possession is in the executor or administrator where one has been appointed and qualified. The heirs may recover possession of real estate against third persons but not against the personal representative. Blakemore v. Roberts, 12 ND 394, 96 NW 1029.

Under the common law title and right to possession of real property descended to the heirs or devisees immediately upon the death of the owner. This rule prevails in this jurisdiction with respect to title, Hoffman v. Hoffman's Heirs, 73 ND 637, 17 NW2d 903, but when a personal representative has been appointed, the right to possession is modified by the sections we have quoted above. The heirs have no right to maintain an action which is hostile to the rights of the administrator. Honsinger v. Stewart, 34 ND 513, 159 NW 12.

Under a statute containing provisions regarding the right to possession by the personal representatives and the duty to collect rents similar to those found in our Section 30-1304, the Minnesota

Supreme Court reached the following conclusion in Bowen v. Willard, 203 Minn. 289, 281 N. W. 256:

"At common law, an executor or administrator was not entitled to the possession or rents of lands of the decedent, because real property descended immediately to the heirs free from administration. The executor's or administrator's right of possession is statutory. Mason Minn. St. 1927 Sec. 8786 (re-enacted L. 1935, c. 72, Sec. 89, Mason Minn. St. 1938 Supp. Sec. 8992–89) provides that the personal representative shall be entitled to the possession of all real and personal estate of the decedent which has not been set apart for the surviving spouse or children, and shall be charged with all such property; that he shall collect the rents and earnings thereon until the estate is settled or until delivered by the probate court to the heirs, legatees or devisees and that he shall keep in tenantable repair, all buildings and fixtures under his control. This statute was copied from the statute of Wisconsin which previously had obtained it from Michigan. Its meaning had been determined by judicial construction before its adoption here. The history and construction of the statute are given in Noon v. Finnegan, 29 Minn. 418, 13 N. W. 197. The statute is not imperative, but merely permissive. It confers on the personal representative the right of possession of the decedent's real estate for the purposes of administration and, notwithstanding the statute, the title to real estate vests as at common law, at death in the heirs, who are entitled to possession and all rights incident thereto, unaffected by the statute, until the personal representative exercises his right under the statute to take possession. . . . The heir's right of possession carries with it the right to rents."

In Jones v. Billstein, 28 Wis. 221; Streeter v. Paton, 7 Mich. 341, and Howard v. Patrick, 38 Mich. 795, it is held that statutes authorizing personal representatives to take possession of the real estate of a deceased does not exclude the possessory rights of heirs and devisees and is permissive but not imperative as to possession by the personal representatives of the deceased. See also notes 40 LRA 343; 31 ALR 4.

Under a California statute embracing provisions similar to our

Sections 30–1304 and 30–2401, it was held that the heirs of a decedent may maintain an action to recover possession where there is no existing administration upon the estate. Updegraff v. Trask, 18 Cal 458; Chapman v. Hollister, 42 Cal 462. In Ryer v. Fletcher-Ryer Co., 126 Cal 482, 58 P 908, it is said:

"The statute (Code Civ Proc, sec 1582) gives the administrator the right to maintain actions for the recovery of any property, real or personal or for the possession thereof, or to quiet title thereto, or to determine any adverse claim thereto. But this is not such action. It is said that authority to bring this action exists under the Code of Civil Procedure, section 1581, which provides: 'For the purpose of bringing suits to quiet title, or for partition of such estate, the possession of the executors or administrators is the possession of the heirs or devisees; such possession by the heirs or devisees is subject, however, to the possession of the executor or administrator, for the purposes of administration, as provided in this title.' We think the section refers to and contemplates actions by the heirs or devisees for quieting title to or partitioning the property of the estate; the intent being to give the heirs or devisees all the rights which actual possession would give them, and to make the possession of the administrator the same as if the heirs or devisees were actually in possession, preserving, however, all the rights of the executor or administrator for the purposes of administration. This construction is consistent with the authority expressly given to the heirs or devisees to maintain actions in ejectment or for the purpose of quieting title by section 1452 of the Code of Civil Procedure."

In Masterson v. Girard's Heirs, 10 Ala. 60, the heirs sued a tenant for rent accruing after the ancestor's death. After referring to statutes and decisions thereunder sustaining the right of the administrator to maintain an action for such rents, the court said, "But we apprehend, the estate, notwithstanding, descends to the heir, and that he is invested with the title, and may exert it with all its incidents until the administrator by notice to the tenant, or by actual suit, indicates his intention to assert the power reposed in him by the statute. It is true, this involves the difficulty, that a suit commenced by the heir, might be defeat-

ed by the claim of the administrator, but we apprehend this is not more serious than is already experienced when a sale is made by the heir after his ancestor's death. In either case we apprehend the title and right of the heir is subject to the exercise of the statute power, but where the power is not asserted or exercised by the administrator, we consider the heir is entitled to the estate, and its incidents, as at common law.".

As we apply our statutes to the facts before us in the light of the decisions to which we have referred, we reach the following conclusions. Title to real estate descends immediately and directly to the heirs of an owner who dies intestate. The heirs also become entitled to all the rights of possession of the ancestor against everyone except a qualified administrator, and where no probate proceedings have been instituted may maintain an action for rents or for the value of the use and occupation of such real estate accruing after the death of the ancestor.

The plaintiff also questions the right of the defendants to counterclaim for use and occupation in an action to quiet title and asserts that their relief is limited to recovery of title and possession. He bases his argument on Section 32–1702, NDRC 1943, which provides:

"A recovery may be had in the action by any party against a defendant personally served or who has appeared, or against the plaintiff, for the value of the use and occupation of the premises and for the value of the property wasted or removed therefrom, in the case of a vendor holding over, or a trespasser, as well as in a case where the relation of vendor and vendee has existed. If such recovery is desired by plaintiff, he shall allege the fact, stating particularly the value of the use and occupation, the value of the property wasted or removed, and the value of the real property aside from the waste or removal, and shall demand appropriate relief in his complaint. A recovery of possession also may be had by the plaintiff or any defendant asking for affirmative relief." He argues that by this section the recovery for use and occupation in an action to quiet title is limited to a vendor holding over, a trespasser, or to a case where the relation of vendor and vendee has existed and that in this case the defendants come within neither of these categories. It is his view that

the section just quoted fixes and limits the parties in whose favor recovery for use and occupation may be had in actions to quiet title whether that use and occupation is claimed by plaintiff or by a defendant.

In considering the question thus raised reference must be had to Section 32–1708, NDRC 1943, which reads as follows with the exception of the parenthetical insertion:

"In an action to determine adverse claims, a defendant in his answer may deny that the plaintiff has the estate, interest, lien, or encumbrance alleged in the complaint, coupled with allegations setting forth fully and particularly the origin, nature, and extent of his own claim to the property, and, if such defendant claims a lien, the original amount secured thereby and the date of the same, and the sum remaining due thereon, whether the same has been secured in any other way or not, and if so secured, the nature and extent of such security, or he likewise may set forth his rights in the property as a counterclaim and may demand affirmative relief against the plaintiff and any codefendant, and in such case he also may set forth a counterclaim and recovery from plaintiff or a codefendant for permanent improvements made by him or those under whom he claims, holding under color of title in good faith adversely to the plaintiff or codefendant against whom he seeks a recovery. Such counterclaim shall set forth among other things the value of the land aside from the improvements thereon, and, as accurately as practicable, the improvements upon the land and the value thereof, and in such case such defendant also may set forth as a counterclaim his demand for recovery of the value of the use and occupation of the premises and value of property wasted or removed therefrom. (In the same manner as provided by Section 5905). The answer shall be deemed served on codefendants by filing the same in the office of the clerk of court of the county where the action is pending at any time within thirty days after the service of summons on such defendant is complete. Where affirmative relief is demanded against codefendants, the allegations constituting counterclaims shall be deemed controverted by all the parties, as upon a direct denial or avoidance, as the case may require, without further pleading."

An action to determine adverse claims is statutory and in its

present form came into the Laws of North Dakota as Chapter 5, Session Laws, North Dakota 1901. A reference to the original enactment discloses that this chapter was largely an amendment of the provisions of the Revised Code of North Dakota for 1899 relating to the determination of conflicting claims to real estate. Our present Section 32–1702 appears in Chapter 5, Section Laws, North Dakota 1901 as Section 5905, and Section 32–1708 as Section 5910. In the course of intervening compilations and codifications there were a few minor changes in wording which with the exception of the phrase we have placed in parenthesis, are unimportant. This parenthetical phrase was retained throughout the compilations and codifications until 1943 when, according to the revisor's notes, it was omitted as surplusage. We, therefore, take this phrase into consideration in construing the section from which it was thus omitted, as having a bearing upon the question urged by the plaintiff and his argument that Section 32–1702 determines who may counterclaim for use and occupation and is a limitation upon the otherwise broader provision of Section 32–1708. Thus the omitted provision that the counterclaiming defendant may set forth a demand for recovery of the value of the use and occupation of the premises "in the same manner" as provided by Section 32–1702 is important as an indication of legislative intention. In Buman v. Sturn, 73 ND 561, 16 NW (2d) 837, we held that the phrase "in the same manner" means by similar proceedings so far as such proceeding are applicable to the subject matter. Thus it tends to imply a mode of procedure rather than the limitation of a right.

Section 32–1708 purports to set forth the scope of a defendant's answer and the relief that he may seek by way of counterclaim. Under it a defendant may deny and resist the rights in and to the questioned property asserted by the plaintiff. He may also set forth in a counterclaim his rights to the property and may demand affirmative relief against the plaintiff or a codefendant. In addition to seeking title and possession, he may also ask recovery for permanent improvements made by him or anyone under whom he claims while holding under color of title in good faith adversely to those against whom he seeks relief. The counterclaimant may also demand recovery of the value of the

use and occupation of the premises and the value of property wasted or removed. This he may do in the manner that is according to the mode of procedure, provided by Section 32–1702, which requires that if such recovery is desired he must so allege after stating particularly the value of the use and occupation where that is the basis for seeking recovery, and must demand appropriate relief. Under a liberal construction of the counterclaim we hold that it is sufficient in its allegations to meet these requirements with respect to a demand for recovery of the value of use and occupation.

The tax deed proceedings were fatally defective because of failure to comply with statutory provisions. The county officials who conducted the proceedings and subsequent grantees of the county including the plaintiff, acted in good faith. The tax deed issued to the county vested in it color of title which in turn was transferred to subsequent grantees. The occupation of the property by the plaintiff was wrongful in the sense that his purported title vested in him no right of occupancy. Under these circumstances he is liable to the defendants pursuant to Section 32–0321, NDRC 1943, which provides that:

"The detriment caused by the wrongful occupation of real property in cases not embraced in sections 32–0322, 32–0327, 32–0328, and 32–0329 is deemed to be the value of the use of the property for the time of such occupation, not exceeding six years next preceding the commencement of the action or proceeding to enforce the right to damages and the costs, if any, of recovering the possession."

The plaintiff contends that despite this statute, recovery for the value of use and occupation of real estate is allowed only where the relationship of landlord and tenant exists. This was the rule at common law and is now the rule in some jurisdictions, but it does not prevail in the presence of statutes such as the one above quoted. We find statutes identical with ours in California, Oklahoma, and South Dakota. Under those statutes it is generally held that the relationship of landlord and tenant is not necessary to a recovery of the value of the use of real property during its occupation. Such a recovery may be had from one whose occupancy was unauthorized and adverse. Richmond

Wharf & Dock Co. v. Blake, 181 Cal 454, 185 Pac 184; Drennan v. Harris, 67 Okla 313, 161 Pac 781, 170 Pac 500; Parkinson v. Shew, 12 SD 171, 80 NW 189; Baldwin v. Bohl, 23 SD 395, 122 NW 247; Weller v. Platt, 33 SD 509, 146 NW 705; see also City of New York v. Fink, 130 Misc Rep 620, 224 NYS 404. Weller v. Platt, supra, was an action to quiet title to a quarter section of land, for possession and for damages for the use and detention. The defendants obtained possession under an invalid tax deed. The trial court awarded damages. upon the theory that the plaintiff was entitled to recover as damages the value of the crops raised on the premises. In holding this to be error, the Supreme Court said, "The defendant in this case claimed and occupied the premises under a tax deed, which constituted color of title, and such occupancy was not in itself willfully wrong or tortious. In such case, the correct measure of damages is the value of the use of the property for the time of such occupancy."

This rule is applicable here. The defendants who prevail as to title and right to possession of the premises are also entitled to recover, under their counterclaim, the value of the use of the property from the time that it was first occupied by the plaintiff up to the date of the judgment, April 14, 1948. Brown v. Newman, 15 ND 1, 105 NW 941. Sections 32–1710 and 32–1711, NDRC 1943.

The plaintiff testified that he farmed the land in question during 1946. He raised about 70 acres of wheat thereon which yielded some 700 bushels. At the time the crop was harvested wheat was worth approximately $1.65 or $1.70 a bushel. This testimony was elicited under cross-examination by defendants' counsel as bearing upon the value of the use of the premises for the year 1946. The record contains no evidence as to rental customs of the vicinity in which the land is situated. The trial court felt that the evidence was not sufficient to permit him to determine the value of the use of the premises. In this he was entirely justified. The plaintiff argues that the trial court found that there was no liability on the part of the plaintiff for use of the premises. We do not so understand the court's findings, but in any event we are satisfied that the plaintiff is liable for the use of the premises and the question of the amount of liability should be determined

in this action rather than in a subsequent suit. We, therefore, remand the case to the district court for further proceedings in order that evidence may be taken with respect to the value of the use of the premises from the time the plaintiff went into possession until April 14, 1948 and a determination thereof made by the trial court.

Since one of the questions raised on this appeal is whether the value of the crop or crops raised on the premises may be considered in determining the value of the use of the premises we make the following observations.

While the right of the defendants in this case to recover the value of the use of the property during occupation by the plaintiff is statutory, we see no difference between the rules regarding the admissibility of evidence to establish that right and rules which determine the admissibility of evidence regarding the value of the use of premises as between landlord and tenant. The amount of recovery for the use of the property during its occupation by the plaintiff is the fair rental value of the property during that period. Jones on Landlord and Tenant, Sec. 651; Tiffany on Landlord and Tenant, Sec. 318; Robbins v. Voss (Tex Civ App) 64 SW 313. In 32 Am Jur, Landlord and Tenant, Sec. 531, it is said, "In an action for use and occupation to establish the reasonable rental value of the land, the value of the property, the rentals of other similar property, and opinion evidence may, under proper circumstances, be admissible." This statement is based upon a note in 44 LRA(NS) 499. See also Keeney & Devitt v. City of Fargo, 14 ND 423, 105 NW 93.

We now pass to the consideration of the deposit made by the defendants. The defendants, over their objection, were required to deposit $672.26 with the clerk of the district court which sum was disposed of by the amended judgment by directing that $243.58 thereof be paid to the plaintiff and the balance of $428.68 returned to the defendants. The defendants claim that the court erred in requiring the deposit in the first instance and further erred in awarding any part of it to the plaintiff.

The statute under which the deposit was made is Section 57–4510, 1947 Supplement to NDRC 1943, which provides that:

"Whenever any action at law or in equity is brought to test the

validity of any deed issued and delivered by the county to the purchaser of lands acquired through tax deed proceedings, the court shall not proceed with the trial of such action until the party assailing the validity of such deed, within the time required by the court, shall deposit with the clerk thereof *for the benefit of the County should the deed be held invalid,* the amount of all delinquent and unpaid taxes on said property, including penalty and interest, plus any taxes paid thereon by the purchaser from the county. Should said action be determined adversely to the purchaser from the county it shall repay to him any monies received by the county on said purchase."

The defendants by their answer and counterclaim challenged the tax deed proceedings through which the plaintiff claimed that he acquired title to the property. This challenge included and involved the validity of the deed delivered by the purchaser from the county who paid to the county the sum of $243.58. The purchaser from the county was one Iver Johnson who in turn sold the property to the plaintiff for $1200. The total amount of the deposit represented the entire amount of taxes which had accrued up to the time of the trial. The trial court properly required this payment pursuant to the statute above quoted. The purpose of the statute is to require one who challenges a tax deed issued by the county to require the challenger to tender, by making a deposit with the clerk of court, all taxes on the property due the county, plus taxes paid by subsequent purchasers. The deposit is primarily made for the benefit of the county for the statute requires the county to repay the purchaser money received by it from the purchaser in event the title fails.

In this instance the county is not a party to the suit. The deposit was made for the benefit of the county should the tax deed be held invalid. The tax deed was held invalid. Thus the county presumptively acquired a beneficial interest in the deposit. It therefore appears that the court may not dispose of the deposit in the absence of a release thereof by the county, without requiring the county to be made a party to the proceedings. To do so was error. The county should be made a party to the case in order that its beneficial interest, if any, in the deposit may be

determined and disposition made of the deposit as the equities require.

The amended judgment insofar as it quiets title in the defendants who are named, is affirmed and the case is remanded to the district court for further proceedings consistent herewith respecting a determination of the value of the use of the premises and the disposition of the deposit made by the defendants.

NUESSLE, Ch. J., CHRISTIANSON and BURKE, JJ., and GRIMSON, District J., concur.

BURR, J., did not participate.